## DAVIS v. LEWIS.

No. 29119. March 5, 1940.

Rehearing Denied April 9, 1940.

*100 P. 2d 994.*

Ben Hatcher, of Ada, for plaintiff in error.

Warren B. Kice, of Ada, for defendant in error.

BAYLESS, C. J. Hazel Lewis filed an action in the district court of Pontotoc county against Stanolind Crude Oil Purchasing Company, a corporation, to enforce the payment to her of certain proceeds from the sale of oil and gas from a certain lease in that county. Muriel Kittell asked and was granted permission to intervene as a claimant of the fund sought by Lewis. Under the issues made by the pleadings, the company became a stakeholder, and the controversy is between Lewis and Kittell.

September 9, 1933, Chism acquired leases on certain land in Pontotoc county. November 20, 1933, Chism assigned said leases and all rights thereunder to Billingsley for a recited consideration of "one dollar (and the sum of $25,000 to be paid from an undivided one-eighth of the seven-eighths working

interest of the oil and/or gas if, as and when the same is produced from the above-described land to be paid by the pipe line or purchaser taking said production)."

November 20, 1933, Chism assigned to E. W. Kemp $8,333.33 of said $25,000 consideration "to be paid to said E. W. Kemp from said production * * * and that said pipe line company or purchaser is hereby ordered and directed * * * to pay said sum to E. W. Kemp. * * *" All of the aforementioned instruments were acknowledged and recorded as instruments subject to record under our statutes.

August 25, 1934, Kemp assigned $2,083.33, of said $8,333.33 to Stafford, and on March 28, 1935, $500 of said $2,333.33 to Gilbreath. Each of these instruments was acknowledged and recorded. Kemp thus owned only $5,750.

April 9, 1935, Kemp assigned $100 of said $8,333.33 to Crabtree by an instrument duly acknowledged, but Crabtree did not record this instrument until December 20, 1935. On January 31, 1936, Crabtree sold this $1,000 interest to Lewis and she recorded her assignment February 4, 1936.

In the meantime, on April 26, 1935, Kemp assigned $2,375 of said $8,333.33 to Emanuel, and this assignment was recorded April 26, 1935. When Emanuel examined the records in connection with his purchase, he decided that Kemp still owned $5,750, or $3,375 after Emanuel's purchase, and he recommended the purchase of that interest to Kittell, his sister-in-law.

April 26, 1935, Kemp executed an assignment to Kittell reciting the sale of "all the right, title and interest of the said E. W. Kemp in and to said $8,333.-33," and this acknowledged instrument was recorded May 4, 1935.

A jury was empaneled, and after deliberation returned a verdict for Lewis; and Kittell, who is now Mrs. Davis, appealed.

We think the primary issue to be decided is well stated by Kittell as her proposition No. 1:

"Plaintiff contends that the property claimed by plaintiff under and by virtue of the 'Assignment of Oil Payment' executed by D. C. Crabtree appearing at page 58 of case-made is personal property, and that the property claimed by defendant under and by virtue of "Assignment Oil Payment' executed by E. W. Kemp appearing at page 60 of case-made is personal property, and that the recording laws of the state of Oklahoma do not apply to either instrument. * * *

"Defendant contends that said property and instrument are subject to the recording laws of the state of Oklahoma and that the defendant had a right to rely upon the records in the office of the county clerk of Pontotoc county, Okla., in determining what interest was owned by defendant's grantor, E. W. Kemp. * * *"

In other words, if the $25,000, and the various assigned fractions thereof, constituted personal property as differentiated from real property, then the statutes of Oklahoma providing for the recording of instruments relating to real estate had no application, and, under the issues and arguments made by the parties, Kittell was not justified in relying on the records alone.

Before proceeding further, we desire to observe that all of the instruments mentioned herein as assigning interests in the sum of $25,000 "to be paid from an undivided one-eighth of the seven-eighths working interest" were sufficiently comprehensive and explicit to constitute equitable liens. See Clark v. Armstrong & Murphy, 180 Okla. 514, 72 P. 2d 362; Mullens v. Geo. C. Wright Lbr. Co., 182 Okla. 355, 77 P. 2d 700; and other Oklahoma cases cited in Am. Dig. (West) Liens, Key No. 7; and Stone v. Wright, 75 Fed. 2d 457.

Since these liens arise by operation of law under the equity powers of our courts, they fall within the purview of section 10941, O. S. 1931, 42 Okla. St. Ann. § 6.

Section 10943, O. S. 1931, 42 Okla. St. Ann. § 8, provides that "an agreement may be made to create a lien upon property not yet acquired * * * or not yet in existence. * * *"

We think this is sufficient to answer the argument made that whatever was conveyed by these assignments of money to be realized in the future was not a present interest or estate, but was an inchoate or future right, and therefore no purpose could be served by recording such instruments. The character of the interest or estate created by instruments relating to oil and gas leases, etc., is well defined in Oklahoma. Cuff v. Koslosky, 165 Okla. 135, 25 P. 2d 290, and other cases.

There seems to be a conflict in the decisions of the various courts with respect to the nature of the property assigned or conveyed by language such as is used in the instruments under consideration, or by substantially similar language. Dashko v. Friedmen (Tex. Civ. App.) 59 S. W. 2d 203; Conoco v. Union Oil Co. (Tex.) 83 Fed. 2d 491, and McCrae v. Bradley Oil Co., 148 Kan. 911, 84 P. 2d 866, all hold that agreements to assign or assignments of a fractional share of the oil and gas, or the value thereof, if, as and when produced, are sales of personal property, and are not sales of real estate. The issues involved in those cases related to the enforceability of such contracts as affected by the statute of frauds and did not involve the issue we have before us arising under the recording laws. We are cited the case of Stone v. Wright, 75 Fed. 2d 457, and Oklahoma case, and have found King v. Gant, 77 Okla. 105, 186 P. 960, which hold contrary to the Texas and Kansas cases cited. In Stone v. Wright, supra, the precise issue presented to us was involved, while in King v. Gant the language of the instrument was similar and was held to involve an interest in real estate and to be enforceable under the statute of frauds.

The general rule with respect to what instruments are entitled to record or must be recorded within the meaning of the law pertaining to recording acts is stated in 53 C. J. 609, § 9:

"The provisions of the statutes which govern recording determine the questions as to what instruments are entitled to be recorded. An instrument which falls within a class which is authorized or required to be recorded by statute may be recorded. * * *"

Section 9672, O. S. 1931, 16 Okla. St. Ann. § 15, provides for the validity of instruments between the parties thereto, and as between the parties thereto and third persons with respect to whether they are or should be recorded; and that part respecting the parties thereto and third persons reads: "but no deed, mortgage, contract, bond, lease or other instrument relating to real estate * * * shall be valid as against third persons unless acknowledged and recorded as herein provided."

The leases were required to be acknowledged and recorded. Tupeker v. Deaner, 46 Okla. 328, 148 P. 853. Likewise the assignment of the leases by Chism to Billingsley. Bentley v. Zelma Oil Co., 76 Okla. 116, 184 P. 131, and text in Summers Oil and Gas (vol. 3 Perm. Ed.) p. 284, § 551, note 69.

The various instruments under consideration relate to the consideration expressed in the assignment by Chism to Billingsley, and in our opinion are "instruments relating to real estate" within the meaning of our statute. It seems to us that these assignments of shares in the $25,000 relate to real estate and rights arising out of oil and gas leases, which are held to be interests in real estate, and are expressly mentioned in the statute.

In the Texas and Kansas cases mentioned earlier, there is no discussion of the recording statutes of those states, and it is entirely possible that there is such a difference between those and ours as to destroy any apparent conflict between those cases and our decision herein. As has been noticed, our recording statutes give a rather broad

scope to the instruments comprehended therein by the use of rather general language as well as some precise enumerations.

In Stone v. Wright, supra, the Circuit Court of Appeals, 10th Circuit, arrived at the same conclusion we have reached concerning an instrument containing substantially similar terms. In that opinion it is said:

"The assignment to Western Paving Company was acknowledged and recorded as the statute requires and permits. It related to and affected real estate because the fund was to come from mineral extracted from the real estate, and it affected that real estate in many respects."

We hold, therefore, that the assignment to Crabtree, upon which Lewis bases her claim, was an "instrument relating to real estate" and was required to be acknowledged and recorded in order to be valid as to third persons under the law on the subject of recording.

Nonrecorded instruments are invalid as to subsequent purchasers in good faith, for value and without notice. No issue is made with respect to the good faith of Kittell or the value paid. The argument turns on the issue of notice. Her agent checked the records and, of course, did not see or learn of the Crabtree assignment from the records, for it was unrecorded then. He testified that he relied altogether upon the records and based his calculation of the interest yet owned by Kemp after his (Emanuel's) purchase, by the records, and relied strictly on the records, and made no inquiry. Kemp was a witness, and when Kittell's lawyer asked him whether he told Emanuel how much he had left, Lewis' lawyer objected on the ground his answer would not be the best evidence and "the records show what he owned." This basis of this objection was Kittell's position exactly and was contrary to Lewis' contention and seems to us wholly inconsistent. The question was then withdrawn, and nothing appears in this record that could have

constituted actual or constructive notice to Emanuel, as agent for Kittell, whereby she would have been put on notice to make other additional inquiry. Under this record she was a purchaser entitled to the full protection of our recording laws. Gungoll v. Elsberry, 177 Okla. 301, 58 P. 2d 852, and other cases.

Kittell demurred to Lewis' evidence, and at the close of the case demurred and moved for a directed verdict. This was refused, and error was thereby committed. The jury should have been instructed to return a verdict for Kittell.

Our discussion obviates the necessity for determining other issues discussed, especially the one as to whether the case was one for a jury.

Stanolind, the stakeholder, has filed a motion to correct the money judgment rendered herein by striking therefrom any allowance of interest on the money which it has withheld pending the outcome of this litigation. In the briefs of both parties they have expressly waived any claim for interest on the money, and for this reason the motion of Stanolind is granted.

Judgment reversed and cause remanded for further proceedings not inconsistent with the views expressed herein.

WELCH, V. C. J., and RILEY, CORN, and HURST, JJ., concur.