LUSCHEN et al. v. STANTON et al.

No. 30068.  May 11, 1943.

*137 P. 2d 567.*

Harrison & Nelson, of Oklahoma City, for plaintiffs in error.

A. P. Van Meter, Twyford & Smith, and William J. Crowe, all of Oklahoma City, for defendants in error.

WELCH, J. One Lawrence owned the lot in question in 1907, such ownership duly appearing of record. In 1927 one Brown was granted an award against Lawrence under the Workmen's Compensation Act. Copy of such award was filed in the district court of Oklahoma county; execution issued thereon and the lot was sold at sheriff's sale thereunder to Brown, credit being allowed upon the award for the purchase price. Sheriff's deed dated April 21, 1927, was given Brown, which was duly recorded on April 29, 1927. Brown immediately went into possession. The lot was vacant and prior to that time had at all times been in the possession of Lawrence, so far as concerns this record as to notice.

On August 16, 1927, plaintiff Luschen purchased the lot for an adequate cash consideration, and the warranty deed therefor given by Brown was duly recorded August 22, 1927. Plaintiffs went into immediate possession and have ever since so remained.

On November 3, 1930, there was recorded a deed dated May 12, 1909, from Lawrence and others to one Stanton, who died in 1932, leaving the defendants herein as his heirs.

In December, 1939, plaintiffs brought this action to quiet title, deraigning title through Brown as above shown. Defendants claimed title by virtue of the deed from Lawrence and others, and sought possession and to have the title quieted in them. Plaintiffs, by reply, among other things, plead laches and estoppel.

The trial court denied plaintiffs relief and rendered judgment for defendants as prayed, upon the finding and conclusion that plaintiffs were not bona fide purchasers. There is no evidence or contention that Brown or plaintiffs had actual notice of the Stanton deed prior to the recording thereof, and the record is silent as to the date upon which such actual notice was had.

The question to be determined here is whether plaintiffs were bona fide purchasers. We shall determine whether Brown was a bona fide purchaser for value, and, if so, we need not proceed further, for it is contended only that plaintiffs have no such status because Brown was not so situated, and, indeed, such seems to be the general rule.

It is pointed out that Brown purchased at his own execution sale, and it is said that a purchaser at his own execution sale is not a bona fide purchaser. That is generally true, or we may better say, that is most frequently true because of the facts. We have so concluded in several cases, some of which we will presently discuss. Three principal elements must be present to constitute one a "bona fide purchaser." An apt definition is to be found in 66 C. J. page 1092, par. 905, as follows:

"The doctrine of equity by which protection is afforded to a bona fide purchaser against prior equities of which he has no notice is based upon the theory that, in reliance upon the legal title, he has parted with a consideration of value or divested himself of some legal right or been induced to change his condition so that a deprivation of the legal title would work him injustice. In other words, where a bona fide purchaser for a valuable consideration, and without notice, has acquired the legal title, a court of equity will not interfere to deprive him of his legal advantage. . . ."

And the elements thereof are stated in the same text under paragraph 906 as follows:

"The essential elements of a 'bona fide purchaser' of land are: (1) The payment of a valuable consideration; (2) good faith and absence of purpose to take an unfair advantage of third persons; (3) absence of notice, actual or constructive, of outstanding rights of others; although good faith may often

be implied where the other two elements, that is, valuable consideration and absence of notice, are shown. These elements must concur or the defense will be unavailing."

In determining whether one who purchases at his own execution sale is a bona fide purchaser, the above rules and elements govern, the same as if the examination was being made as to any other purchaser. The authorities which we have examined disclose that one or more of the above elements are absent where it has been determined that the purchaser at his own execution sale is not a bona fide purchaser. Such cases are numerous, we think, because of the fact that in nearly all cases such purchaser, being a party to the suit and generally responsible for its integrity, is possessed of either actual or constructive notice of the fault or defect in the suit or proceeding which is the cause of and supports the conclusion that the judgment or sale is defective. Thus he has notice. Harjo v. Johnston, 187 Okla. 561, 104 P. 2d 985; see, also, cases to the same effect cited in notes 23 C. J. 764, par. 813, and 33 C. J. S. 587-8, par. 295.

There is also a class of cases where it has been held that a judgment lien-holder is not an encumbrancer for value as against an outstanding equity, because he has parted with nothing of value. J. I. Case Threshing Machine Co. v. Walton Trust Co., 39 Okla. 748, 136 P. 769; Oklahoma State Bank v. Burnett, 65 Okla. 74, 162 P. 1124; Kennedy v. Roff, 178 Okla. 71, 61 P. 2d 1041, and others.

There are other cases, not so numerous, including two of our own, Gilbreath v. Smith, 50 Okla. 42, 150 P. 719, and Harris v. Southwest National Bank, 133 Okla. 152, 271 P. 683, which have carried the same rule of the lien cases, supra, past the point of purchase at sheriff's sale, upon the theory that even then, and in the given case, the purchaser has paid no valuable consideration; that he still retains his judgment debt and that he is in no worse position than he was before the purchase. Those

cases are based upon the conclusion that the element of "the payment of a valuable consideration" is not present, and that the purchaser was capable of placing himself in status quo.

Other cases show actual or constructive notice before the purchase: Scott-Baldwin Co. v. McAdams, 43 Okla. 161, 141 P. 770; Lunn v. Kellison, 66 Okla. 168, 153 P. 1136, and Streeter v. Anderson, 172 Okla. 113, 43 P. 2d 53. In most of the cases we find the expression of the general rule to the effect that a purchaser at his own execution or judicial sale is not a bona fide purchaser. We find few, if any, such expressions or applications of the rule, however, where one or more of the "elements" referred to is not missing. Generally, each case involving the application of equitable principles is to be examined with most careful attention to all the facts in the given case. We observe that the text writers generally assert that there is considerable division of opinion on the exact question we now have. Our search leads us to believe that any such differences are due to the application of the legal principles rather than to the rules themselves.

In the present case it is beyond question that there is present the element of "absence of notice, actual or constructive, of outstanding rights of others." Actual notice is not shown or suggested. Constructive notice is not shown because the Stanton deed was not recorded at the time Brown purchased at sheriff's sale, and claim of defendants is not based upon any fault in the proceedings sponsored by Brown or under his control and for which he was responsible. Thus there is no notice to Brown of anything forming the basis of defendants' claim. It is to be seen, therefore, that this case is not of the class of cases based upon notice, actual or constructive.

Obviously, the case does not come within the class of cases involving priority of liens founded upon lack of consideration.

This case is most nearly of the class represented by Gilbreath v. Smith and

Harris v. Southwest National Bank, supra, wherein it was concluded that the purchaser at sheriff's sale had paid no valuable consideration and therefore was not a bona fide purchaser.

Herein plaintiffs have pleaded estoppel and laches, as against the claims of defendants. They contend, in effect, that it cannot be properly said under the facts here that this record discloses that Brown is in no worse position at the time when he received notice of defendants' claim than he was before he purchased at sheriff's sale and credited the purchase price on his award.

We recognize the proper application of equitable principles in the assertion of the rule that where the judgment creditor purchases at his own execution sale, only crediting the judgment debt with the purchase price, he is not a bona fide purchaser, when the facts in the case justify the conclusion that at the time he received notice of defect he is in no worse condition than before the purchase—where it may be concluded that at the time of notice he is in position to establish himself in status quo.

That was clearly the theory and conclusion of this court in the Gilbreath v. Smith and Harris v. Southwest National Bank Cases, supra. Those cases do not disclose the time of the disclosure of actual notice of the outstanding claims. If we would need to justify the conclusions of fact therein, we think that sufficient.

Observe that in Gilbreath v. Smith, supra, laches is not asserted or considered, and in neither that case nor the Harris Case, supra, was estoppel or laches considered as established.

Of the question of laches herein asserted we find the following statement in 30 C. J. S. Equity, sec. 115:

"There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another; each case is to be determined according to its own particular circumstances. In other words, the question of laches is addressed to the sound discretion of the chancellor."

Many of our own cases recognize and apply the rule that a purchaser will be held to be a purchaser for value where the purchase price is credited on an antecedent debt, and point out clearly that before it may be said otherwise the facts must show that the purchaser is in no worse condition than before the purchase. That such cases do not relate to purchasers at execution or judicial sale is of no consequence, as relates to whether value has passed, we have already shown.

In Noe v. Smith, 67 Okla. 211, 169 P. 1108, paragraph 2 of the syllabus, it is held:

"(a) The complete satisfaction and discharge of an antecedent debt is a valuable consideration for the conveyance of real estate. . . ."

Note the following expression of this court therein:

"And we know of no court that does not hold that, if for any reason the purchaser is placed in a worse condition than he was before, he is entitled to the protection of the recording acts. For he has been led to change his condition because the true owner of the holder of a secret equity, through negligence or mistaken confidence, has allowed another to appear as the owner with full power of disposition, and

" 'He who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.'

"But, if either must suffer, it must be he who permitted or made possible the deception."

In Payne v. Allen, 178 Okla. 328, 62 P. 2d 1227, paragraph 4 of the syllabus is to the following effect:

"Ordinarily, a creditor is not an innocent purchaser where a conveyance from a trustee to the creditor is made in consideration of the payment of a debt owing by the trustee to the creditor.

But where the owner of land clothes another with the indicia of title to same and a creditor of the holder of the legal title in good faith purchases said lands from the holder of the legal title for the consideration of discharging a pre-existing debt due to the creditor by the holder of the legal title, and the creditor changes his position for the worse so that he is in a worse position than he was before he took title to the lands held in trust for the vendor, the creditor is a bona fide purchaser for value, and the cestui que trust is not entitled to have the conveyance from the trustee to the creditor canceled or set aside."

Many equitable principles announced in Young v. Cole, 91 Okla. 113, 216 P. 429, though relating therein to personal property, are applicable here.

Granting that at the time Brown purchased defendants might have acted in such manner and with sufficient promptness to save Brown from harm, thus placing Brown in status quo as relates to his award or claim against Lawrence, we must determine from all the facts herein present whether they did so, and whether we are justified under these facts in concluding that Brown, after notice, was in no worse condition than before. he purchased the lot. Many equitable principles are applicable in that regard, including estoppel and laches.

Certainly Brown cannot be charged with lack of good faith and diligence. He examined the record, which disclosed the legal title in Lawrence. Possession was consistent with the record. There is not the slightest suggestion in the record that he had notice, either actual or constructive, of the Stanton claim. He proceeded with every precaution which common prudence would require.

Stanton carelessly or purposely had delayed for 18 years to place his deed of record, nor did he take active possession. Such unexplained action is equivalent, for these considerations, to active investiture of indicia of title as considered in the Payne Case, supra. True, the law did not require him to record his deed, but it did provide him with an adequate method of giving notice of his title. It is commonly known that a failure to record will likely result in misleading a third person to his injury.

Thus Stanton was bound to know that Brown would likely be misled, which is exactly what occurred when he purchased at sheriff's sale. Having been so misled, it became the immediate duty of Stanton to prevent injury to Brown as a result.

Though Brown was misled, Stanton still failed to act to save him from loss. He gave no actual notice of his claims, and so far as this record discloses, no actual notice was given until shortly before the filing of this suit some twelve years after the purchase by Brown. It is true the Stanton deed was recorded some three years after the recording of the sheriff's deed, but we doubt whether that act alone would be sufficient for the purpose under discussion. Passing that point in this case, however, we observe that no semblance of notice was given for more than three years after Brown purchased, giving credit on his award and, of course, desisting from further efforts to collect same.

It is a matter of common knowledge that one is less likely to collect a debt owing to him when he has no actual knowledge of its existence, and therefore puts forth no effort to enforce collection of same from one who has evidenced a disposition to avoid payment. Here Brown was led to believe that his debt had been paid for at least three years without fault or lack of diligence on his part and due to the negligence, lack of diligence, and possibly the purposeful acts of Stanton. Under these facts we cannot say that Brown is placed in no worse condition than had. he not purchased the land, satisfied his claim, and desisted from further attention to the collection of same. We hold herein to the contrary.

Statements of equitable principles, most of which we consider applicable to our consideration and conclusion above, are to be found as follows: 30 C. J. S. page 520, par. 112:

"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. . . ."

Same text, page 521:

"A stale demand or claim in its proper sense is one that has for a long time remained unasserted; one that is first asserted after an unexplained delay of such great length as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and do justice between the parties, or as to create a presumption against the existence or validity of the claim, or a presumption that it has been abandoned or satisfied. . . ."

The Stanton deed was not recorded until 18 years after its execution. We do not know who recorded same or from whence it came at that late date. Stanton was dead at the time of trial and it would seem apparent that Lawrence might be disinclined to assist plaintiffs in establishing their rights. Regularity would in some cases be presumed in those respects, but such long and unexplained delay casts a long shadow of doubt upon the validity of defendants' claim therein. At this late date it is difficult for the court to know with reasonable certainty that the deed was ever delivered, or that it was not given in trust and that title had reverted after performance of the trust. It is not improbable under these facts that the original party grantee claimed no title thereunder.

"The doctrine of laches has existed since the beginning of equity jurisdiction. Its existence is independent of statutes of limitation. The doctrine of laches is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of the matters in controversy and doing justice between the parties, and on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands. Laches is based on the maxims: Nothing can call equity into activity but conscience, good faith, and diligence. Equity aids the vigilant, not those who slumber on their rights. He who seeks equity must do equity, and, He who comes into equity must come with clean hands." 30 C. J. S. p. 524, par. 113.

See, also, subdivision B, page 538, and paragraphs 117, 118, 119, and 120 following in same text.

The judgment is reversed and the cause remanded, with instructions to render judgment quieting plaintiffs' title as prayed.

CORN, C. J., GIBSON, V. C. J., and RILEY and BAYLESS, JJ., concur. HURST, DAVISON, and ARNOLD, JJ., concur in conclusion. OSBORN, J., dissents.