BARKER et al. v. BRITISH AMERICAN OIL PRODUCING CO. et al.

No. 34711. Feb. 3, 1953.

Rehearing Denied May 5, 1953.

*256 P. 2d 807.*

James R. Eagleton, Oklahoma City, for plaintiffs in error.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for defendants in error.

DAVISON, J. The defendants in error herein, the British American Oil Producing Company, a corporation, F. E. Harper and Roy J. Turner, as plaintiffs, brought this suit in equity against the defendants, H. R. Barker, C. A. Davis and Clara Davis, plaintiffs in error here, to quiet their title to an oil and gas leasehold estate in certain lands in Oklahoma county, Oklahoma, the acreage in controversy being about two and one-half acres. The parties will be referred to as they appeared in the trial court.

On March 25, 1941, the said C. A. Davis and Clara Davis, his wife, while the owners of a number of blocks in the Gee and Jones Subdivision of the

west half of the southwest quarter of sec. 4, twp. 12 north, range 2 west, in said Oklahoma county, executed a contract of sale and warranty deed to Auguste D. Bellegarde and Ida Rowland Bellegarde, as grantees, on a five-acre block in said subdivision, designated number 13, reserving, however, to the grantors an undivided one-half interest in the oil and gas underlying the premises. The contract and deed, without being recorded, were placed in escrow with one Frank Trosper, for delivery to the grantees when the total purchase price of $600 had been paid in accordance with the terms of the contract. The sale of this block and of several other blocks in said subdivision were negotiated and handled by the said Trosper. The Bellegardes did not take actual possession of the property which was rough unoccupied land, nor did they pay taxes or any of the purchase price other than the original small down payment.

On April 16, 1947, C. A. Davis and Clara Davis executed and delivered to the plaintiffs, F. E. Harper and Roy J. Turner, an oil and gas lease covering said block 13 and eight other blocks in the subdivision. The lease was for a primary term of five years, contained a general warranty of title and was recorded April 17, 1947. At the time of filing this suit, the lease was owned jointly by all the plaintiffs, insofar as block 13 was concerned. In June, 1949, the defendants, Davis, employed one Hal Folmar to clear up the title to said block 13 and, as compensation, agreed to give him an oil and gas lease on said block and a mineral interest in some other land. Folmar located the Bellegardes and on June 10, 1949, for $1 consideration, secured a quitclaim deed from them to him. On June 13, 1949, Folmar executed an oil and gas lease on block 13 to the defendant, H. R. Barker, and on June 20, 1949, he executed a quitclaim deed thereon to Davis. The warranty deed from Davis to Bellegarde, the quitclaim deed from Bellegarde to Folmar, the oil and gas lease from Folmar to Barker and the quit-claim deed from Folmar to Davis were all recorded on June 21, 1949.

Although the facts are rather detailed, the issues between the parties are simple. Plaintiffs contend that their lease covers said block 13 in its entirety, and that at the time of its execution the lessees had no notice, either actual or constructive, of any claim or interest of the Bellegardes to the premises; that the deed from Davis to Bellegarde was never delivered nor was the purchase price ever paid; that the quitclaim deeds from Bellegarde to Folmar and from Folmar to Davis were elements of a fraudulent attempt to defeat the warranty of title in the lease from Davis to Harper and Turner and that Folmar and the defendants, Davis and Barker, were estopped from asserting any interest adverse to plaintiffs.

Defendants, on the other hand, assert that the oil and gas lease from Davis to Harper and Turner covered only the right, title and interest of the lessors in the premises at the time of the conveyance; that plaintiffs' lease covered only an undivided one-half interest in the minerals under said block 13, because that was all that was owned by Davis at that time; that Bellegarde owned a one-half interest in the minerals until foreclosure or voluntary conveyance and that the defendant Barker obtained a leasehold estate which was never reconveyed to Davis and, therefore, could not have passed to plaintiffs as an after-acquired title under the warranty of title in plaintiffs' lease.

A trial of the case to the court resulted in a judgment for plaintiffs, from which defendants have perfected this appeal.

The lease to Harper and Turner from Davis conveyed:

"* * * the following described land in Oklahoma County, State of Oklahoma, to-wit:

" 'All of Blocks Seven (7), Eight (8), Nine (9), Ten (10), Eleven (11), Twelve (12), Thirteen (13), Fourteen (14), and

Sixteen (16), of the Gee and Jones Sub-Division to Oklahoma City, Oklahoma, according to the recorded plats thereof, being a part of the West Half of the Southwest Quarter (W½ SW¼) of Section Four (4), Township Twelve (12) North, Range Two (2) West, Oklahoma City. Oklahoma.' "

The check for $450, payable to C. A. Davis and Clara Davis, given in payment of the bonus for said lease, bore the following notation:

"Full cash bonus consideration for new 5 yr. term oil & gas lease covering all their interest in W½ SW¼ sec. 4 Tp. 12 R. 2W."

The above-quoted notation on the check forms the basis for defendants' argument that the lease was intended to cover only the interest actually owned by Davis at that time and did not include the one-half mineral interest in block 13, covered by the Bellegarde contract of sale. To support this position, defendants cite the cases of Pauly v. Pauly, 198 Okla. 156, 176 P. 2d 491, and Reed v. Whitney, 197 Okla. 199, 169 P. 2d 187. Neither cited case is analogous to the one now before us. The Pauly case deals with the enforcement of an oral contract, later reduced to writing, made contemporaneous with, and as part consideration for, a deed. The Reed case deals with a conveyance wherein the phrase "all their right, title and interest in and to" preceded the description in a deed.

All of blocks 7, 8, 9, 10, 11, 12, 13, 14 and 16 of the subdivision, described in the lease from Davis to Harper and Turner, constituted only a part of the W.½ of the S.W.¼ of the described section. Therefore, the above-quoted notation on the check in no way conflicts with or limits the description contained in the lease. The Bellegarde contract and deed were not recorded until long after plaintiffs' lease was executed, delivered and recorded. The land was rough and unoccupied, and Bellegarde did not in any way take actual possession of it. The testimony of the witnesses as to actual notice being given to the agent who procured the lease for the plaintiffs was conflicting. Under such circumstances, the rules of law discussed in the recent case of Metzger v. Mueller, 205 Okla. 490, 238 P. 2d 802, are applicable and controlling. Therein, it was said:

"The rule is well established that in the absence of actual or constructive notice of a previous conveyance, or of matters which would put a purchaser on inquiry, a bona fide purchaser for value will take a good title to the property. Luschen v. Stanton, 192 Okla. 454, 137 P. 2d 567; Davis v. Lewis, 187 Okla. 91, 100 P. 2d 994; Gungoll v. Elsberry, 177 Okla. 301, 58 P. 2d 852.

"* * * The trial court heard and passed upon the evidence which was conflicting on this point. The judgment is not clearly against the weight of the evidence, and should not be disturbed on appeal. Kliewer v. Bodenheimer, 199 Okla. 107, 184 P. 2d 456; Wahby v. Renegar, 199 Okla. 191, 185 P. 2d 184, and cases cited in Note 566 to 12 O.S.A. §952."

These rules are in harmony with the applicable portions of the opinions in the cases of Davis v. Lewis, 187 Okla. 91, 100 P. 2d 994, and Luschen v. Stanton, 192 Okla. 454, 137 P. 2d 567.

Having reached this conclusion, it is not necessary to discuss allegations in plaintiffs' reply to the effect that the several transfers culminating in the lease to the defendant Barker were parts of a fraudulent scheme aimed toward defeating plaintiffs' title. Nevertheless, it should be noted that the record discloses that, after Davis employed Folmar to get a release of the Bellegarde contract, Folmar and Barker worked together in locating the Bellegardes and in getting the quitclaim deed from them; that Barker took the acknowledgment thereon and that both were to share in the profits made from the transaction.

However, the judgment should be sustained for the reasons above discussed.

Judgment affirmed.

WELCH, CORN, ARNOLD, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur. HALLEY, C. J., dissents.