**UNITED STATES of America, Plaintiff,**

v.

**FISHING VESSELS PAN ALASKA, ST. JOHN AND JUNIOR, and their appurtenances, in rem, and Johnnie Jack and Maggie Jack, Frank Jack and Elizabeth Jack, Paul F. James, Sr. and Maggie James, in personam, Defendants.**

**John G. WARNER, d/b/a Jack Warner Marine Industries, Intervener and Cross-Plaintiff,**

v.

**UNITED STATES of America, Cross-Defendant.**

**Nos. A–38–69, A–39–69, A–40–69.**

United States District Court,
D. Alaska.

July 1, 1970.

Douglas L. Gregg, Gregg, Kohls & Schulz, Juneau, Alaska, for plaintiff Warner.

Douglas B. Baily, U. S. Atty., Anchorage, Alaska, for the United States.

## MEMORANDUM

VON DER HEYDT, District Judge.

These causes, consolidated by order dated November 5, 1969, are before the Court on cross motions for summary judgment filed by the United States, plaintiff, and John G. Warner, intervenor. Each claims to own, and thus to be entitled to foreclose, preferred ship mortgages on three vessels, F/V Junior, F/V Pan Alaska, and F/V St. John.

The manner in which this unusual situation arose substantially is undisputed.

The owners of the vessels in question, *in personam* defendants here, are all members of the Angoon Community Association, a federally chartered organization under the Indian Reorganization Act of 1934, 25 U.S.C. § 476, as amended, 25 U.S.C. § 473a (1964). The Secretary of the Interior has made substantial loans to the Association over the years under the provisions of 25 U.S.C. § 470 (1964). As security, the Association, in 1962, executed a document entitled "General Assignment and Assignment of Income", by which it assigned to the United States all "agreements, notes, rights, and securities which it has received or shall acquire in connection with loans it has made or will make to its members or associations of its members."

The promissory notes and preferred ship mortgages in question here were among the "notes, rights, and securities" affected by the above General Assignment. They secured loans originally made by the Association to the *in personam* defendants. The United States, however, did not record the General Assignment under the provisions of the Ship Mortgage Act, 46 U.S.C. § 921–22 (1964).

During the spring of 1965, plaintiff in intervention Warner, d/b/a Jack Warner Marine Industries, performed repairs on the three vessels, Junior, Pan Alaska and St. John, charging these repairs to open accounts in the names of the vessels' owners. In 1967 he brought an action on these accounts, not in admiralty, but at common law in the State Superior Court. Alleging that by business custom and usage he had a right to rely on the Association to pay its members' repair bills, he joined both the boat owners and the Association, and on April 7, 1967, obtained a confession of judgment in the following amounts:

| | |
|---|---|
| From Johnny Jack: | $ 260.95 |
| From Paul and Maggie James: | $1,706.96 |
| From Frank Jack: | $3,701.80 |
| From Angoon Community Association, jointly with the others: | $5,669.71 |

In November, 1967, by writ of execution, Warner obtained the notes and mortgages on the three vessels from the office of the Bureau of Indian Affairs in Juneau. Warner, the only bidder at the subsequent sale, bought the said notes for $1.00, together with the mortgages securing them. He obtained a bill of sale in the usual form, and thus now claims that he is the owner of the preferred ship mortgages in question, and is entitled to foreclose them.

Proceeding upon the theory that Warner's execution sale was invalid, the United States obtained specific assignments of the same notes and mortgages from Angoon. Warner's request to record his bill of sale according to the Ship Mortgage Act having been refused by the Coast Guard, the United States recorded its assignments and brought this action, claiming that it is the true mortgage holder and is entitled to foreclose.

The claim of the United States rests entirely upon federal admiralty law. Having obtained specific assignments and recorded them in the proper manner, the United States is the mortgage holder of record, and is prima facie entitled to foreclose. Warner, on the other hand, obtained his interest, if any, by means of an action at law in the state courts, and now seeks to foreclose in admiralty. Thus, intervenor's claim must satisfy both the federal maritime law and the law of the State of Alaska; if his execution sale was ineffective to pass title under state law he cannot prevail here.

The parties have cited no Alaskan authority directly in point, and the Court has found none. The well established general rule, however, is that the principle of *caveat emptor* applies to execution sales, and the purchaser receives only the actual interest of the debtor and no more. Reynolds v. Reynolds, 54 Cal.2d 669, 7 Cal.Rptr. 737, 355 P.2d 481, 488 (1960) (en banc); Sander v. Wells, 71 Wash.2d 25, 426 P.2d 481, 484 (1967); 30 Am.Jur.2d Executions § 430 (1967). Thus in Santens v. Los Angeles Finance Co., 91 Cal.App.2d 197, 204 P.2d 619 (1949) it was held that a finance company, having assigned a note and deed of trust to a third party, had no interest in them which could be sold at execution, and the ostensible purchaser of the note and deed at execution received nothing.

In the case at bar, although the unrecorded General Assignment may not have given the United States the status of a preferred mortgagee in admiralty, there is no doubt that it was valid as between the parties thereto. Thus Angoon had no actual interest in the notes and mortgages at the time of the execution sale, and if the above general rule applies, Warner, as purchaser, received nothing.

The courts have recognized that where the execution purchaser in good faith buys property subject to "secret" infirmities or equities, he may be entitled to protection as a bona fide purchaser. *See* 30 Am.Jur.2d Executions § 444 (1967). The authorities differ on the application of this rule to a judgment creditor purchasing at his own execution sale.

There are decisions which support the position that a judgment creditor purchasing at his own execution sale cannot be a bona fide purchaser. Sander v. Wells, *supra*. Other cases indicate that he can, but only if he pays in cash, and not merely by a credit against the judgment. Rexburg Lumber Co. v. Purrington, 62 Idaho 461, 113 P.2d 511, 513 (1941). Still other courts have stated that, although the execution creditor who merely credits on the judgment is normally not a bona fide purchaser, he can be, and the normal equitable rules on the subject apply. Luschen v. Stanton, 192 Okl. 454, 137 P.2d 567 (1943).

Whatever the rule to be applied by the courts of Alaska, Warner cannot qualify. When he levied on the notes and mortgages they were not in the possession of the Association, but were in the office of the Bureau of Indian Affairs of Juneau. It is evident that the existence of this fact should have been sufficient to put

Warner on notice to inquire into the true state of affairs. But, beyond this, at the execution sale Warner purchased, for the sum of $1.00, notes and mortgages on which, acording to his own cross-claim in this action, some $100,000 was due and owing. Such consideration hardly qualifies as nominal, and in itself is sufficient indication of bad faith to defeat intervenor's claim that he is a bona fide purchaser.

Therefore, it is ordered:

1. That intervenor and cross-plaintiff John G. Warner's motion for summary judgment is denied;

2. That plaintiff United States of America's motion for summary judgment against intervenor and cross-plaintiff Warner is granted;

3. That counsel for plaintiff prepare an appropriate form of judgment.