AMAREX, INC., Plaintiff,

v.

EL PASO NATURAL GAS COMPANY,
Forest Oil Corporation; and Bracken
Exploration Company, Defendants.

No. 66910.

Supreme Court of Oklahoma.

June 2, 1987.

Rehearing Denied May 16, 1989.

Richard E. Coulson, Stephen W. Elliott, Kline & Kline, James W. Vogt, Reynolds, Ridings & Hargis, Oklahoma City, for appellant,

Douglas B. Glass, Clark K. Ervin, Vinson & Elkins, Houston, Tex., for appellee.

SUMMERS, Justice.

The United States Bankruptcy Court of the Western District of Oklahoma, pursuant to 20 O.S. (1981) §§ 1601 et. seq., has certified to this court the following question of law:

"May the operator of an oil and gas lease perfect its contractual operator's lien against the interest of another working interest owner by filing a lien in the form of a mechanic's and materialman's lien statement, 42 O.S. §§ 144, 146 (1981), or must the operator perfect its interest within the recording statutes as an instrument affecting real estate? 16 O.S. §§ 93, 94, 95, and 96. Stated another way, must an oil and gas operator comply with real estate recording requirements or those of statutory oil and gas lien statements in order to perfect a contractual, consensual joint operator's lien against the interest of another working interest owner."

We answer as follows:

The operator's lien created by the A.A.P.L.[1] Form 610–1977 Model Form Operating Agreement is a contractual lien. In order to perfect such a contractual lien against a working interest owner's real property rights, an operator must file an operating agreement in the land records of the county or counties where the lands are located. Such an instrument must be executed, attested and acknowledged in accordance with the statutory formalities found in Title 16 of the Oklahoma Statutes. This holding does not necessarily preclude an operator from obtaining and perfecting a lien for labor performed or materials furnished under the entirely separate and in-

---

1. American Association of Petroleum Landmen.

dependent statutory procedure set forth in 42 O.S.1981 §§ 144 and 146.[2]

## I.

The certified question arises from the following facts: Forest Oil Corporation (Forest) and Amarex, Inc. (Amarex) entered into an A.A.P.L. Form 610–1977 Joint Operating Agreement, dated March 1, 1981. The relevant portion of the Joint Operating Agreement provides:

> "Each non-operator grants to operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment ... In addition, upon default by any non-operator in the payment of its share of expenses, operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser of the proceeds from the sale of such non-operator's share of oil and/or gas until the amount owed by such non-operator, plus interest, has been paid."

Forest, pursuant to the March 1, 1981 Joint Operating Agreement, acted as operator of an oil and gas well known as the Armstrong #1–25, which was located in Roger Mills County, Oklahoma. Forest claims that Amarex failed to pay drilling and operating expenses incurred by Forest pursuant to their Joint Operating Agreement. Forest filed a mechanic's and materialmen's lien statement on October 28, 1982 in Roger Mills County against Amarex's interest in the Armstrong 1–25 well. This lien statement was not signed by Amarex. Forest did not file a copy of the operating agreement in the real estate records of that county, nor did Forest file any other document, executed, attested or acknowledged by Amarex, in those real estate records.

Amarex filed a bankruptcy petition on December 2, 1982. The United States Bankruptcy Court confirmed a plan of reorganization on September 26, 1985. Under the reorganization plan, Amarex merged with a subsidiary of Templeton Energy, Inc., which resulted in Temex Energy, Inc. (Temex). Temex is the successor of Amarex, and the trustee and debtor in possession in the Amarex bankruptcy.

Under the plan Forest's claim is to be paid in cash to the extent that it is finally allowed as a secured claim. The bankruptcy court found that Forest did not perfect its lien on equipment and proceeds from the sale of oil and gas under Uniform Commercial Code provision 12A O.S.1981 § 9–402(1).[3] *The question before us is whether Forest perfected its lien against the real property aspects of Amarex's oil and gas leasehold interests in the Armstrong #1–25.*

Forest contends that it has a valid perfected statutory oil and gas lien against the Armstrong #1–25 well because it complied with 42 O.S.1981 § 144, which prescribes the method for creating such a lien. Forest further contends that its operator's lien, which arose from the joint operating agreement with Amarex, is perfected because (1) there is no material difference between a statutory oil and gas lien and a contractual operator's lien, and thus compliance with the mechanics' and materialmen's lien statutes is a satisfactory method for perfecting a contractual lien; and (2) the filed lien statement put third persons on inquiry notice because the operating agreement was mentioned therein.

Temex maintains that the question whether a statutory oil and gas lien under 42 O.S. (1981) § 144 is available to an operator is beyond the scope of the certified question; nonetheless, Temex urges that the statutory lien cannot be asserted by Forest. Temex contends that the operator's contractual lien arising from its Joint Operating Agreement cannot be perfected by filing a mechanics' and materialmen's lien statement.

## II.

Liens may be created by contract or by operation of law. 42 O.S.1981 § 6.

---

**2.** Subsequently amended: 1983 Okla.Sess.Laws, ch. 57, § 1, 1985 Okla.Sess.Laws, ch. 136, § 2.

**3.** Amended 1985 Okla.Sess.Laws, ch. 292, sec. 2, operative October 1, 1985.

The A.A.P.L. Model Form Operating Agreements provide the operator with a contractual lien against the interest of the non-operator. Forest has such a contractual lien against Amarex's interest in the Armstrong 1–25 well. Although a contractual lien relating to real estate is enforceable between the parties, it is not enforceable against third persons without proper acknowledgement and recording. 16 O.S. 1981 § 15.

Under Oklahoma law statutory liens and contractual liens are perfected in different ways. The manner in which a lien is perfected is dependent on both the type of lien asserted, either contractual or statutory, and the type of property against which the lien is asserted, either real or personal.

■ With regard to statutory liens, the statute creating the lien normally prescribes the method of perfection. The statutory procedure for perfecting the statutory oil and gas lien is found in 42 O.S.1981 § 146. Methods of perfection found in Title 42 are intended to apply only to Title 42 statutory liens and have no application to contractual liens, notwithstanding the similarities between the terms of the statutory oil and gas lien and the contractual operator's lien. See 42, O.S.1981 § 146. In contrast, the statutory oil and gas lien does not fall within the recording statutes as an instrument affecting real estate. *Davidson Oil Country Supply Co. v. Pioneer Oil & Gas Eqpt. Co.*, 689 P.2d 1279, 1281 (1984).

■ The procedure for perfecting a contractual operator's lien against an oil and gas lease is similar to the method for perfecting a mortgage. Because both the mortgage and the contractual operator's liens are instruments affecting real estate, both mortgages and contractual operators liens must be executed and acknowledged, in compliance with the provisions of 16 O.S. (1981) § 26,[4] and then filed in the real es-

tate records of the county where the land lies. 16 O.S.1981 § 15.[5]

■ The method of perfection for contractual liens is dependent upon the type of property encumbered. The property subject to the lien, in the present case includes Amarex's interest in the leasehold. This Court held that an oil and gas lease creates an interest in real property but it is not *per se* real estate. *Archon Oil Co. v. Cate*, 695 P.2d 1352, 1354 (Okl.1985). The cluster of rights comprised within an oil and gas lease represents interests in land. *Hinds v. Phillips Petroleum Co.*, 591 P.2d 697, 698 (Okl.1979).

■ Because an oil and gas lease creates an interest in real property the appropriate place to file a contract from which a contractual lien against an oil and gas lease arises is in the land records of the county in which the leasehold is located. 16 O.S. 1981 § 15. Third persons rely upon the land records for information regarding encumbrances upon interests in land. As an instrument affecting rights in real estate, the document providing notice of such a lien must be filed in accordance with recording requirements of Title 16 to be valid as against third persons. Id.

The operating agreement, as the contract creating such a lien, is the preferred instrument to be filed in the land records. Hass and Wickes, "Oil and Gas Liens", 31 Rocky Mt.Min.L.Inst. 18–1 (1980). Such an instrument provides full and accurate notice when executed by the owner of the property to be encumbered as required by *Perkins v. Cissnell*, 32 Okl. 827, 124 P. 7 (Okl.1912). Third persons are not bound to take notice of a lien created by any person other than those within the chain of title. Id. Therefore, it is imperative that the contractual lien statement filed in the land records contain the signature of the owner of the property encumbered, otherwise con-

---

**4.** "No deed, mortgage or other instrument affecting the real estate shall be ... recorded unless executed and acknowledged ... and the recording of any ... instrument not so executed and acknowledged *shall not be effective for any purpose.*" 16 O.S.1981 § 26 (Emphasis supplied).

**5.** "... *[N]o ... contract ...* or other instrument relating to real estate ..., *shall be valid against third persons unless acknowledged and recorded as herein provided.*" 16 O.S.1981 § 15 (Emphasis supplied).

fusion as to the status of the ownership of the property is sure to result. Forest neither filed the operating agreement nor any other document executed by Amarex.

■■■ Although the filing of an operating agreement is the preferred method of perfection, a document filed in the land records of the county where the leasehold is located, which document was executed by the owner of the interest burdened by the lien, and which fully describes the terms of the lien and the leases and lands encumbered, and which was executed, attested and acknowledged in accordance with the recording statutes, will suffice to perfect the operator's contractual lien against the interest of a non-operator working interest owner. In addition our statutory scheme requires every instrument affecting real estate, made by a corporation, must be executed by a statutorily authorized agent of the corporation. 16 O.S.1981 §§ 92 and 93. Further, where an instrument is not executed by any one in the record chain of title, the record does not, of itself, constitute constructive notice. *Tenneco Oil Co. v. Humble Oil and Refining Co.*, 449 P.2d 264 (Okl.1969). Once again, no lien statement or operating agreement executed by Amarex was to be found in the land records of Roger Mills County, and therefore Forest has failed to perfect its contractual operators lien. 16 O.S.1981 § 92 and 93.[6]

■■■ Forest contends that the statutory lien statement which was filed, at least suffices to put third persons on "inquiry notice", since that lien statement made reference to the existence of an operating agreement. In fact, the lien statement refers to a "contract", not an operating agreement. Such a reference is inadequate to put any third party on notice of a Joint Operating Agreement; the mere existence of a contract does not necessarily lead a third party to the conclusion that a contractual lien exists as a result of that contract,

thereby constituting notice to a third party. To perfect an oil and gas lien under 42 O.S.1981 § 144 requires that the labor and materials furnished be pursuant to a "contract". Therefore mentioning a contract in a lien statement pursuant to Title 42 in no way suggests an operating agreement.

### III.

■■■ However, a Title 42 oil and gas lien is available to an operator, and is enforceable against the owner of a leasehold interest, if the operator follows the requirements of Title 42. *Cleary v. Sewell*, 299 P.2d 524 (Okl.1956). There is some contrary authority. *In re: George Rodman, Inc.*, 38 B.R. 829 (Bkrtcy.W.D.Okl.1984) held that in the development of their common property an operator of an oil and gas leasehold unit was not entitled to a statutory oil and gas lien against the owner of a non-operating working interest. *In re: George Rodman* was decided on the basis of *Uncle Sam Oil Co. v. Richards*, 60 Okl. 63, 158 P. 1187 (1916), where the court held that a statutory oil and gas lien was not available when the underlying contract was for the development of common property. However, we find that the distinction between an operator who owns an interest in the lease and an operator who does not own an interest in the lease is not significant. Section 144 begins with the words "Any person, corporation or copartnership". There is no indication within the statute that these words were intended to mean "any person except an owner." *Uncle Sam* based its conclusion that owners are not within the class of persons that are entitled to a mechanic's or materialmen's lien, solely upon a case which does not warrant such a conclusion, *Swift v. Calnan*, 102 Iowa 206, 71 N.W. 233 (1897). In *Swift* the plaintiff built a wall, with the consent of defendant, on the dividing line between their lots. The defendant promised that, should he use the wall, he would reimburse the plaintiff for half the

---

6. 16 O.S.1981 § 93. Manner of execution by corporation.

*Every* deed, or other *instrument affecting real estate* made by a corporation must have the name of such corporation subscribed thereto

either by an attorney-in-fact or by the president or a vice-president of such corporation, and when made by a public corporation the name of such corporation must be subscribed by the chief officer thereof. (emphasis added)

cost of the wall. The court held that the plaintiff could not establish a mechanic's lien against defendant's property because the agreement was simply a conditional agreement to pay for material already furnished. Such an agreement did not qualify as a contract to provide materials within the meaning of the lien statute. Thus, *Swift* did not base its holding upon any finding of co-ownership of property between the parties. Other than depending upon *Swift* as authority, *Uncle Sam* does not appear to give any cogent reasons for its holding. Moreover, *Uncle Sam* stated:

> "... in a proper case ... a lien upon the undivided interest of the defendant might be imposed for the benefit of the plaintiff, but the pleadings and facts in this case do not make out such a case." 60 Okl. at 66, 158 P. at 1190.

*Uncle Sam* does not disclose why the contract between the lease owners did not fall within the purview of the lien statute. Therefore the basis for *In re: George Rodman* does not require the result reached. To the extent that *Uncle Sam* is inconsistent with this opinion, it is overruled.

The statement of lien filed by Forest was for "labor services, furnishing materials, machinery, and oil supplies." In addition, the managerial functions performed by the operator qualify him to assert the statutory oil and gas lien under 42 O.S. (1981) § 144. That statute states that

> "[A]ny person, corporation, or co-partnership who shall, under contract, express or implied, ... perform labor or services, including written contracts for the services of a geologist or petroleum engineer ... used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil or gas well ... shall have a lien upon the whole of such leasehold ..." 42 O.S.1981 § 144.

■ Managerial functions qualify as labor within the mechanic's lien statute. *Diffenbach v. H.M. Mahler Co.*, 167 Okla. 518,

30 P.2d 907 (1934). The operator manages the development of the non-operator's leaseholds. Even under a strict construction of the statute, there appears to be no reason why the services performed in the operation of an oil and gas well should not be within the "labor and services" provision of 42 O.S.1981 § 144.

Additionally, Section 144 includes services arising from a written contract for the services of a geologist or petroleum engineer. It is difficult to see a distinction between the quality of benefits resulting from the services of a geologist or petroleum engineer and the managerial and administrative functions of the operator under the Model Form Operating Agreement. Thus, the statutory oil and gas lien should be available to operators. Many commentators agree. See Kinzie and Dancy, "The Statutory Oil and Gas Lien in Oklahoma", 20 Tulsa L.J. 179 (1984); Note, "Oil and Gas: Security Interests Under the A.A.P.L. Form 610—1977 Model Form Operating Agreement", 36 Okla.L.R. 916 (1983); Haas and Wickes, "Oil and Gas Liens", 31 Rocky Mt.Min.L.Inst. 18–1 (1980); Note, "Oil and Gas: Operator's Liens in Bankruptcy—The Model Form Operating Agreement Versus the Trustee in Bankruptcy's Avoiding Powers", 37 Okla.L.R. 141 (1984).

■ The operator of a well provides administrative and managerial services, and is bound to pay for labor and services provided under contracts to develop the lease. The privilege created by 42 O.S. 1981 § 144 is afforded to "any person" rendering such services. Although the operator usually has a contractual lien under an operating agreement, nothing in 42 O.S. 1981 § 144, under the strictest construction, precludes the operator from asserting a statutory oil and gas lien against a working interest owner's leasehold interest. In reaching this conclusion, we are not called upon to decide whether the statutory oil and gas lien in this particular case was properly perfected.[7] We only hold that the

---

7. Forest Oil Corporation attempted to perfect its lien by recording what is substantially a statutory mechanic's and materialman's lien statement in Roger Mills County, Oklahoma pursu-

ant to 42 O.S.1981 §§ 144, 146 for $658,619.88 for "performing labor or services, furnishing materials, machinery, and oil supplies used in the digging, drilling, completing, and operating

consensual operator's lien was not perfected, and where there is compliance with the provisions of Title 42, an operator is within the class of persons entitled to assert a statutory oil and gas lien.

QUESTION ANSWERED.

All Justices concur.

of various oil and gas wells, and for furnishing oil and gas well supplies; and performing labor in constructing or putting together any of the machinery used in drilling, operating, completing, or repairing the said oil and gas wells; and for performing labor upon oil well supplies, tools and other articles used in digging, drilling, torpedoing, completing operating, or repairing said oil and gas wells...." Such "labor and services" and "materials" fall within the purview of Title 42.