## No. 16,493.

SMITH ET AL. *v.* HAERTEL ET AL.
(244 P. [2d] 377)

Decided April 7, 1952.   Rehearing denied April 28, 1952.

Messrs. LONG & HYMAN, Mr. THOMAS D. SMART, for plaintiffs in error.

Mr. THORNTON H. THOMAS, JR., for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

SARAH HAERTEL, Freda Bornemeier, John Smith and Carl Smith began an action against William F. Smith, Anne Smith and Thomas Knight to obtain a judgment decreeing them to be the owners of a certain half section of land in Kit Carson county, free and clear of any right, title or interest whatever of defendant; awarding them possession thereof; and for an accounting for rents and profits. Trial was had to a jury. At the conclusion of all of the evidence, plaintiffs' motion for a directed verdict was granted, and judgment entered in favor of plaintiffs and against defendants. The defendants are here by writ of error seeking a reversal of the judgment.

We will herein refer to the parties as plaintiffs and defendants as they appeared in the trial court. William Smith will be designated as the father and William F. Smith as the son.

Defendant Knight filed a disclaimer, and the action was dismissed as to him.

As summarized by defendants' counsel, plaintiffs in their complaint alleged that: They are the owners and entitled to the possession of the lands in question since January 20, 1946; that the possession of the defendants is as tenants at will; that the tenancy was terminated on March 1, 1949; and that they refused to surrender possession; that reasonable rental is due plaintiffs in the sum of $3,000; and that defendants being in wrongful possession, plaintiffs are entitled to treble damages; the prayer, accordingly, is for possession, for judgment for $3,000 for use and occupancy, and $4,500 for unlawful detention.

The allegations of the amended answer may be summarized as follows: Defendants deny the allegations of plaintiffs' complaint, and allege that defendant William F. Smith has been in possession of the lands involved

and the owner thereof since August 30, 1920. For a second defense defendants allege that on September 11, 1922, they executed and delivered a deed to plaintiffs' grantors to secure contemplated future advances to defendant William F. Smith; further that William F. Smith has been in continuous and adverse possession of the land in question since September 11, 1922.

From the record it appears that this is a family quarrel between brothers and sisters to determine the ownership of a half section of land in Kit Carson county, Colorado, for which the father paid $11,200. It further appears that William Smith and Katy Smith were the father and mother of seven children, of whom the plaintiffs and defendants are five. On February 18, 1920, the father acquired title to the land, and on August 30, 1920, he and his wife transferred the same to defendant and his wife, reciting in the deed, inter alia, "The said above described real estate is hereby given, granted and conveyed by the grantors herein to the said William F. Smith and Anne Smith, grantees herein, as an advancement in and to the estate of said William Smith, a grantor herein."

Within less than thirty days after acquiring title, the son and his wife executed a promissory note in the sum of $2,800 with interest at ten per cent per annum, due five years after date, and secured the payment of said note by deed of trust upon the land. Thereafter, on June 10, 1922, the son executed his note for $525 and secured the payment thereof by deed of trust on the land. The property had been sold for unpaid taxes, and certificates for the same were outstanding.

Prior to July 22, 1922, a judgment was obtained against the son, and on that date a certificate of levy was recorded. The record indicates that the son had become hopelessly involved financially.

The father returned to Colorado from his home in Nebraska and paid all of the liens against the property, including unpaid taxes, and on September 11, 1922, the

son and his wife deeded the property to the father and his wife Katy.

Subsequent to September 11, 1922, all taxes assessed against the property were paid by the father or the plaintiffs herein, and no moneys whatever were paid by the son to the father, reimbursing him for the moneys advanced. The son was permitted to testify, over objection, that when he and his wife executed the deed to his father it was agreed that the father would convey the title to him "whenever he got on his feet so he could handle it," and that in this agreement to reconvey the title he was not obligated to pay anything; further that after conveying the title to his father he was to remain on the premises by permission of his father. If the arrangement or agreement between the father and son, as the son testified, was ever entered into, there is no evidence whatever in the record that the plaintiffs herein had notice or knowledge thereof.

According to the son's testimony, he wrote his mother in 1936 to request a deed to the land in order that he might borrow money to purchase cattle, and, as appears from his evidence, he received a letter from his mother, which was lost. Concerning this letter he testified that his mother wrote him that "The Colorado land is willed to you and that is the way it will stay. It can never be changed." The son accepted this statement, was satisfied with, and relied upon it, and did nothing further respecting a deed to him. In December, 1936, William Smith, his father, subscribed and verified a property statement to be used as a basis for a loan from The Farmers State Bank, Ithaca, Nebraska, in which he listed as his assets the land here in question and stated, under oath, that it belonged to him and was unencumbered.

According to the record, on March 30, 1938, the father and his wife conveyed the property by warranty deed to the plaintiffs herein, reserving in themselves a life interest. At the time the father and mother conveyed the title to the property to the plaintiffs, some of their prop-

erty was encumbered; they were in need of funds for their maintenance and support; and plaintiffs entered into a written agreement whereby they assumed and agreed to pay the encumbrances against the property and provide their mother and father with funds for their support during their natural life; and this was the consideration for the deed. The record is devoid of any evidence to indicate that plaintiffs failed in any respect to carry out their agreement.

It also appears from the record that the son and two other of the children of William and Katy Smith did not obligate themselves to discharge any encumbrances on the property or to support and maintain their parents, and, knowing of the arrangement between the plaintiffs and their father and mother, the two children other than the son agreed in writing to accept the advancements already made them in lieu of any interest in the estate of the father and mother.

William Smith, the father, died on June 23, 1941, and Katy Smith, the mother, died on January 20, 1946. In June, 1942, the son answered a letter from his sister Sarah, one of the plaintiffs, who evidently had written with reference to the payment of rent, and in a disconnected and abusive manner refused to pay rent or to share in his father's funeral expenses, and, among other things, stated, "As all of you know that I took this [the land in question] for my share. I have papers to that effect, and you will find copy of same in the bank at Ithaca, Nebraska. Then later I sold it back to father and mother."

The mother, by her daughter Sarah, as agent in fact, served a notice of termination of tenancy and demand for possession on the son on September 4, 1943, to which notice the son paid no attention whatever. In 1948 plaintiffs served notice on defendant Smith to vacate the premises, and he paid no attention to the notice. The litigation here followed.

No competent evidence whatever is to be found in the

entire record in support of the defenses of adverse possession or conspiracy, and counsel for both parties at the trial agreed with the court that "This whole lawsuit hinges upon which construction is to be given to the warranty deed which Mr. Smith and his wife, Anna Smith, gave to his father; whether it was in fact a mortgage."

█ █ For our purpose on this review, a mortgage may be defined as a conveyance of an estate or interest in land by way of pledge as security for payment of a debt, and it becomes void upon payment. 1 Jones on Mortgages (8th ed.), p. 21, §17. In order to constitute a valid mortgage, it is not necessary that the instrument itself should contain a description of the debt, payment of which is intended to be secured, nor is it essential that there be a note or other obligation separate from the mortgage itself evidencing the indebtedness, but it is necessary that there be a debt to be discharged; that this indebtedness be recited in the mortgage; and the nature and amount of the indebtedness secured by the mortgage must be so expressed that subsequent purchasers and attaching creditors need not look beyond the mortgage itself to ascertain both the existence and amount of the debt. 1 Jones on Mortgages (8th ed.), p. 538, §425.

We view the son's testimony in its most favorable light and note that there is a complete absence of any evidence whatever of any indebtedness owing by him to his father which is secured by the deed here involved. As a matter of fact, the son definitely and positively testified that the father was to reconvey the property to him in event "he got on his feet so he could handle it," but there is no evidence in the record that this eventuality has been reached. The transaction here under consideration is not a mortgage within the generally accepted definition and concept of that term.

█ Under the presented facts, before the court may properly consider the transaction wherein the son and his wife deeded the property in question to the father and his wife in 1922 as an equitable mortgage, it must

find from the evidence that the deed was given as security for an indebtedness owing by the son and wife to the father and his wife. It also must appear from the instrument, or the circumstances present at the time of the transaction, that the intention was that the property was to be held as security, and, further, the intent to create an equitable mortgage must be clearly evidenced so that a prospective purchaser may be apprised of the fact that the transactions between the parties to the instrument have not been fully completed and all obligations thereunder fully discharged.

There was no competent evidence before the court which would warrant it in holding that the transaction here involved resulted in the creation of an equitable mortgage. It should be remembered that the deed in question was executed in 1922; that the son remained in possession of the premises with his father's consent and approval; that in 1936 the father, in a sworn statement, listed the property described in the deed as his property; that the father and plaintiffs herein paid all of the taxes assessed against the property from 1920 to date; and that in 1938 plaintiffs, for a valuable consideration, assumed and agreed to pay the encumbrances and to provide their parents with necessaries and comforts during their natural lifetime. This agreement constituted a valid consideration for the execution of the deed by the father and mother to the plaintiffs on March 30, 1938.

There is no evidence in the record that plaintiffs were advised, or had any knowledge whatever, of any arrangement such as was testified by the son, respecting the title to the property and his alleged interest therein. Under these circumstances, plaintiffs were entitled to rely upon the record; they were bona fide purchasers for value, and the deed from the father and mother gave them the property free and clear of any claim whatever of the son and his wife, defendants herein. *Valley State Bank v. Dean*, 97 Colo. 151, 47 P. (2d) 924; 1 Jones on Mortgages (8th ed.), p. 263, §225; 59 C.J.S., p. 53, §18;

1 Glenn on Mortgages, p. 50, §10.1; 1 Wiltsie on Mortgage Foreclosures (5th ed.), p. 60, §30.

There was no competent evidence before the court and jury from which it could properly be determined that the deed from the son and his wife to plaintiffs' grantors was a mortgage, equitable or otherwise, and, under these circumstances, it became the duty of the trial court to direct a verdict for plaintiffs at the conclusion of all the evidence in the case.

The attorneys appearing here for plaintiffs in error did not participate in the trial below.

The judgment is affirmed.