**In re SIMASKO PRODUCTION CO., Debtor.**

**Bankruptcy No. 84 B 3537 G.**

United States Bankruptcy Court, D. Colorado.

Aug. 28, 1985.

T. Edward Icenogle, Denver, Colo., for debtor.

Welborn, Dufford, Brown & Tooley by John F. Meck, Denver, Colo., for claimants, William G. Azar, C.R. Kennelly and D.J. Moore Corporation.

## ORDER

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER is before the Court on the objections of debtor-in-possession, Simasko Production Company ("Simpco"), to the proofs of claim filed by William G. Azar, C.R. Kennelly and D.J. Moore Corporation (collectively "Claimants"). D.J. Moore filed its proof of claim on November 30, 1984. William G. Azar and C.R. Kennelly filed their proofs of claim on December 10, 1984. Simpco objected to these claims February 11, 1985. The objections were amended March 7, 1985. Simpco now objects to the status and amount of the claims.

The issue before the Court involves the nature of the Claimants' interests. Claimants do not believe themselves to be creditors of the estate. They filed their claims only to protect themselves, should the Court determine them to be creditors. Claimants assert that they are the owners of a production payment granted to them by Simpco. This production payment, it is argued, would be an interest in real property and unaffected by Simpco's subsequent bankruptcy.

Simpco denies that it granted the Claimants a true production payment. Simpco asserts that the Claimants are simply holders of unsecured claims against the estate.

## FACTS

The facts are undisputed. On July 13, 1977, Cook Inlet Region, Inc. granted an oil and gas lease to Simpco on certain lands in the State of Alaska (the CIRI—1 Lease). At that time, an action entitled *Cook Inlet Region, Inc. v. D.J. Moore Corporation,* Case No. 76–4171 J, was pending in the Superior Court for the State of Alaska. The controversy in that action concerned the enforceability of Moore's right of first refusal on lands affected by the CIRI—1 lease. On February 3, 1978, that action was settled by a written agreement among Cook Inlet Region, Inc., Simpco, Moore, Azar and Kennelly. A copy of the settlement agreement has been submitted by both parties.

The interest which is the subject of this dispute was created by paragraph 4 of the settlement agreement, which provides:

4. *Production Payments.* Simpco shall pay Moore and K & A, from the proceeds received by Simpco as a result of the sale or exchange of oil or gas saved, sold and marketed from the leased premises, within thirty (30) days after receipt by Simpco of said proceeds, a production payment equal to Two Percent (2%) of the value at the wellhead of the gross production with regard to which Simpco has been paid; provided however, that Simpco shall have no obligation to make any further payments to Moore or K & A after Moore and K & A have received, in addition to the cash payment set forth in Paragraph 3 above, a total of THREE MILLION NINE HUNDRED THOUSAND DOLLARS ($3,900,000) in payments, production or otherwise, from Simpco.

Paragraph 7 of the settlement agreement required the parties to treat the document as confidential. Only a memorandum summarizing the settlement agreement was recorded. A copy of this memorandum was

attached as Exhibit C to the copies of the settlement agreement supplied to the Court. ("Exhibit C").

It is the effect of the settlement agreement and subsequent recording of Exhibit C which is before the Court. If a true "production payment" was created, Claimants' interest will be unaffected by Simpco's bankruptcy. However, if the Court finds that a debt, as defined by 11 U.S.C. § 101(11), was created, the corresponding claim can be treated in Simpco's plan of reorganization.

## LEGAL ANALYSIS

■ "Production payment" is a term of art. It is defined as a "non-operating interest which is free of the cost of production." *Tennant v. Dunn*, 130 Tex. 285, 110 S.W.2d 53, 56 (1937). Production payments, like overriding royalties are interests in real property which are carved out of the lessee's interest. *Id. Davis v. Lewis*, 187 Okl. 91, 100 P.2d 994 (1940). In fact, production payments are identical to overriding royalties, except that a production payment is limited in amount to a stated volume of production or until a specified sum has been realized from production. Hemingway, *The Law of Oil and Gas*, 2d Ed. § 9.9, p. 487. In this case, Claimants' so-called production payment is limited to $3,900,000.

■ The threshold issue is whether Simpco conveyed to the Claimants a true production payment by the settlement agreement. It is fundamental that in order to create the assignment of an interest in real property, the instrument purporting to make the assignment must contain words of grant or conveyance. *Snider v. Snider*, 208 Okla. 231, 255 P.2d 273 (1953), 23 *Am. Jur.2d* Deeds, § 19, p. 91 (1983). No particular form of words or formality is necessary in the granting clause. However, the instrument must manifest an intent to convey the real property, *Scott v. Brown*, 71 Colo. 275, 206 P. 572 (1922).

■ In this case, the settlement agreement does not manifest an intent to convey a production payment to Claimants. Exhibit C was specifically incorporated into the settlement agreement by reference. Settlement Agreement, ¶ 7. Exhibit C was the only part of the settlement agreement which was recorded. It specifically stated:

> The above-referenced contract [the settlement agreement] in no way creates any lien, interest or other encumbrance upon real property.

It is also important to note the Exhibit C is signed only by the Claimants. It is generally recognized that the signature of the grantor is essential to the validity of a conveyance of real property. 23 *Am. Jur.2d*, Deeds § 110, p. 149 (1983). Simpco's signature is conspicuously absent from the signature blocks on Exhibit C. As Exhibit C was to be the only recorded evidence of the settlement agreement, I find the absence of Simpco's signature to be further evidence of an intent not to convey an interest in real property.

Turning to the main body of the settlement agreement, it is equally clear that the parties intended to create a debt and not to convey an interest in real property. The recitals to the settlement agreement state that the settlement gave Claimants "... an immediate cash payment by Simpco and the right to receive additional *payments* up to a maximum of $3.9 million." (emphasis supplied).

Paragraph 4 set forth the terms under which the additional payments would be made. That paragraph provided:

> Simpco shall *pay* Moore and K & A from the proceeds received by Simpco ... a production payment equal to two percent (2%) of the value at the wellhead of the gross production with regard to which Simpco has been paid ... (emphasis supplied).

This language is consistent with the creation of the debt. Paragraph 4 uses the term "production payment" as a measuring device to determine the amount of the debt. Additionally, under paragraph 4, Claimants could look only to the proceeds received by Simpco for payment. There is no indication

of an intent to create an interest in the real property, itself.

I, therefore, find that the settlement agreement did not convey a "production payment" to Claimants. The settlement agreement created a debt, as that term is defined in 11 U.S.C. 101(11), between Simpco and Claimants. No independent interest in real property has been conveyed.

 Having determined that the settlement agreement created a debt, it is necessary to determine if the debt is secured or unsecured. The finding that the settlement agreement did not convey an interest in real property compels the finding that the debt was not secured by the lease. To create a security interest in the lease, it is necessary to have a conveyance of an interest in the real property by way of pledge. *See: Smith v. Haertel,* 125 Colo. 348, 244 P.2d 377 (1952). Exhibit C specifically stated that no lien had been created by the settlement agreement.

Additionally, I find nothing in the settlement agreement which would lead me to believe that the debt was secured by the proceeds of production.

Having determined that Claimants are the holders of claims against the estate, it is necessary to have a hearing to determine the amount of each claim.

It is therefore ordered that a pre-trial conference will be held for one-half hour, on Tuesday, September 24, 1985, at 1:30 p.m., at which time the matter will be set for trial.