### In re SIMASKO PRODUCTION COMPANY, Debtor.

### William G. AZAR, C.R. Kennelly, and D.J. Moore Corporation, Appellants,

### v.

### SIMASKO PRODUCTION COMPANY, Appellee.

Civ. A. No. 86–K–442.
Bankruptcy No. 84 B 3537G.

United States District Court,
D. Colorado.

June 19, 1987.

---

S. Kirk Ingebretsen and John F. Meck, Welborn, Dufford, Brown & Tooley, Jonathan A. Margolies, Sterling & Miller, P.C., Denver, Colo., for appellants.

T. Edward Icenogle and Virginia Moses Dalton, Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for Simasko Production Co.

Jonathan A. Margolies, Sterling and Miller, P.C., Denver, Colo., for Linda Siderius.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an appeal from a order entered on August 28, 1985 by Judge Gueck, formerly of the bankruptcy court. That order has been published as *In re Simasko Production Co.*, 52 B.R. 676 (Bankr.D.Colo.1985). Jurisdiction over this appeal lies under 28 U.S.C. § 158(a) and Rule 8001(a) of the Rules of Bankruptcy Procedure. For the reasons explained below, the order is vacated and the case remanded to the bankruptcy court.

On July 13, 1977, Cook Inlet Region, Inc. granted Simasko an oil and gas lease. At that time appellant Moore, represented by attorney appellants Azar and Kennelly, was engaged in litigation against CIRI in Alaska state court. Moore sought to enforce a right of first refusal on lands affected by the lease.

On February 3, 1978, Moore, Azar, Kennelly, CIRI, and Simasko settled the lawsuit by written agreement. In applicable part, paragraph 4 of the agreement provided as follows:

4. *Production Payments.* Simpco [Simasko] shall pay Moore and K & A, from the proceeds received by Simpco as a result of the sale or exchange of oil or gas saved, sold and marketed from the leased premises, within thirty (30) days after receipt of Simpco of said proceeds, a production payment equal to Two Percent (2%) of the value at the wellhead of the gross production with regard to which Simpco has been paid; provided, however, that Simpco shall have no obligation to make any further payments to Moore or K & A after Moore and K & A have received, in addition to the cash payment set forth in Paragraph 3 above, a total of THREE MILLION NINE HUNDRED THOUSAND DOLLARS ($3,900,000) in payments, production or otherwise, from Simpco.

On July 25, 1984, Simasko filed a voluntary petition for chapter reorganization. Appellants subsequently filed a claim to protect the interests represented in ¶ 4 of the February 3, 1978 agreement. On August 28, 1985, the bankruptcy court held appellants were holders of unsecured claims, rather than a true production payment, under paragraph 4. This appeal followed.

I must first determine the applicable standard of review. Under Bankruptcy Rule 8013, "the district court is bound to accept the bankruptcy court's findings of fact unless they are clearly erroneous.

However, this court is not so restricted in reviewing the bankruptcy court's interpretations of law." *In re Cricker*, 46 B.R. 229, 230 (N.D.Ind.1985). Appellants contend the appeal presents solely an issue of law and consequently argue for application of the independent standard of review. Appellants' Opening Brief at 2–3. Appellee, on the other hand, in a rather convoluted argument, appears to press for application of the clearly erroneous standard, at least in part. Appellee's Brief at 1.

The issue raised on appeal is whether the February 3, 1978 settlement agreement executed among appellants, appellee and CIRI actually conveys a "production payment," as that term is defined under oil and gas law, to appellants. The bankruptcy court considered this issue to hinge on "the effect of the settlement agreement and subsequent recording of Exhibit C [to that agreement]." *Simasko*, at 678. The court found the settlement agreement did not manifest an intent to convey a production payment to appellants. *Id.* On appeal, appellants agree that "[t]he only matter left for this court, therefore, is to determine whether the settlement agreement manifests an intention to create a production payment." Reply Brief at 4.

The question presented by the appeal is therefore one of the intent of the parties. Where "the evidence of agreement between the parties consists of an unambiguous document, the determination of the meaning and effect of its provisions is a question of law for the court." *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 596 F.Supp. 1428, 1430 (D.Colo.1984). *Accord Rothenberg v. Lincoln Farm Camp, Inc.* 755 F.2d 1017, 1019 (2d Cir. 1985) ("[w]here the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning, the question of interpretation is one of law to be answered by the court"). The rationale behind this principle is that "[i]f the lan-

guage is clear, the parties' intentions are not at issue." *Gomez v. American Electric Power Service Corporation*, 726 F.2d 649, 651 (10th Cir.1984). For example, on a Rule 56 motion under the Federal Rules of Civil Procedure, "[t]he legal effect or construction of a contract is a question of law that properly may be determined on a summary judgment motion when the parties' intentions are not in issue." 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2730.1 (West 1983).

Where, however, the language of the contract is ambiguous, a triable issue of fact is presented. *Rothenberg*, at 1019. "Thus, in an ambiguous contract, if the intent of the parties is disputed, a genuine issue of material fact exists which cannot be determined summarily by the court." *Gomez*, at 651. In that event, the court will usually consider extrinsic evidence, such as course of dealing or custom in the industry, for additional help in deciphering the contracting parties' intent.

The parol evidence rule is tailored to address this situation. "[W]hen the contract is unambiguous on its face the operation of the parol evidence rule will preclude the introduction of outside evidence." Wright, Miller & Kane, § 2730.1. Conversely, the parol evidence rule purposely contemplates use of extrinsic evidence where the contract is ambiguous. *Montoya v. Cherry Creek Dodge, Inc.*, 708 P.2d 491, 492 (Colo.App.1985). "The initial question ... concerning the existence of an ambiguity is one of *law* that may be decided summarily by the court." *Gomez*, at 651 (emphasis in original), citing Wright, Miller & Kane, § 2730.1.

A question arises, however, where, as in the case at bar, the contract is ambiguous but no consideration is accorded to extrinsic evidence.[1] In that event, the parties' intent is inferred solely from the four corners of the contract itself.[2] The question

---

1. The bankruptcy court's decision made no mention of extrinsic evidence, even though the record on appeal reflects the presence of such evidence in the record. *See, e.g.,* R.Vol. IV; *see also* Appellants' Opening Brief at 4–5, and Reply Brief at 2–3.

2. This position appears to be nonsensical, because if the parties' intent can be discerned from the contract itself, then the antecedent finding of ambiguity would be defied. Such a conclusion is not inescapable, however. Conceivably, a certain provision or clause in a con-

then arises whether an inference of intent drawn solely from an ambiguous contract constitutes a legal finding or a factual finding.

The great commentator Corbin resolves this problem by doting on the distinction between "interpretation" and "construction." "The question of interpretation of language and conduct—the question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law." 3 *Corbin on Contracts* § 554 (West 1960) On the other hand, "[t]he determination of the legal operation of a contract, after the meaning of its language has been adopted by process of interpretation, is always for the court, because 'legal operation' is the result of applying rules of law to the facts." *Id.* "[C]onstruction is always a matter of law for the court." *Id.*

Corbin was acutely aware his distinction could be clouded by practical considerations of the divergent functions of judge and jury. He warned the fact question of interpretation "is like other questions of fact in this: it may be a question that should be answered by the judge rather than by the jury. In cases in which it is so answered, it is probable that the interpreting judge may say that interpretation of language is a 'question of law for the court.'" *Id.*

Corbin was cited in *Gomez* in support of the statement that "the question concerning the *interpretation* of a written agreement is one of *fact*." *Gomez*, at 651 (em-

phasis in original). The *Gomez* court, however, did not reach the issue of whether an inference of intent drawn solely from an ambiguous contract constitutes a legal or factual finding. In *Gomez*, the Tenth Circuit concurred with the district court's finding of unambiguity. Since the language was clear no factual question arose concerning the parties' intentions, and the court affirmed summary judgment entered below. *Id.* at 651.[3]

I find Corbin's distinction between "construction" and "interpretation" to be too neat, at least where intent is determined solely from the confines of an ambiguous contract. The difference between "construction" and "interpretation" of a contract strikes me as a semantic one which defies practical application, at least where the court performs both of those tasks.[4] In addition, assiduous institution of this distinction would eviscerate the scope of appellate review of trial court decisions rendered in contract cases that did not survive to the trial stage. For example, the Supreme Court of Alaska has stated:[5]

Where the facts relating to surrounding circumstances are not in dispute, interpretation of the words of the contract is treated in the same manner as questions of law, and the standard used in reviewing factual findings is inapplicable.

*National Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 586 (Alaska 1976). *Accord Alesna v. LeGrue*, 614 P.2d 1387, 1389 (Alaska 1980); *A & G*

tract could be ambiguous, but that ambiguity could be resolved solely by reference to the contract document as a whole or to other parts of the contract.

3. *See also In the Matter of Dunes Casino Hotel,* 63 B.R. 939 (D.N.J.1986). There, the court stated that "interpretation of a 'wholly unambiguous' commercial contract is a question of law and thus subject to plenary review, but *findings* based on ambiguous contract language are questions of fact." *Id.* at 944 (emphasis added). Nor do I find that case to be especially helpful on the question of inference of intent drawn solely from an ambiguous contract, since the *Dunes* court did not specify whether the findings to which it referred were factual or legal in nature.

4. *See* ¶ 15 of the settlement agreement, quoted in note 5, below. That paragraph appears to

use the terms "construed" and "interpreted" as synonyms.

5. Paragraph 15 of the settlement agreement stipulates that the agreement "shall be construed and interpreted in accordance with the laws of the State of Alaska and the United States of America." This provision may possibly require application of Alaska law to interpret and construe the settlement agreement, *on the merits,* in this bankruptcy action. It does not require me to apply Alaska law in determining the standard of review operative on a federal bankruptcy appeal. Nevertheless, because of the obvious interrelatedness, under the rather unusual circumstances posed by this case, of the merits and the standard of review, Alaska law is compelling for its persuasive value.

*Construction Co. v. Reid Brothers Logging Co.*, 547 P.2d 1207, 1212–13 (Alaska 1976).

■ Finally, I take cognizance of the purpose behind the clearly erroneous standard of review. That doctrine is designed to prevent the appellate court, reading off a cold record, from second-guessing the trial judge's assessment of credibility. "The resolution of conflicts in the evidence and the appraisal of credibility of witnesses are for the trial court hearing a case without a jury." *Ramos v. Lamm*, 639 F.2d 559, 567 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). Therefore, "findings by the trial judge who heard and saw the evidence may not be set aside on appeal unless they are clearly erroneous." *Id.* More than any appellate tribunal, the trial judge finds himself in the pit with the players. The clearly erroneous standard translates this unique position into a legally cognizable form. The same rationale applies to the clearly erroneous standard under Bankruptcy Rule 8013. *See* Advisory Committee Note to Rule 8013.

■ If a trial court's determination of the meaning of words in a contract were permitted to constitute findings of fact in the absence of any extrinsic evidence, then the purpose behind the clearly erroneous standard would be obviated. The trial judge who saw and heard no evidence other than the printed words of the contract itself would have his findings unjustifiably insulated from appellate review by the protective fence of the clearly erroneous standard. The appellate tribunal on the other hand, which is just as capable as the trial court[6] of gleaning information solely from the four corners of a document, would be unduly hindered in performing its proper task. I therefore reject the Corbin position, at least for the limited purposes of considering bankruptcy appeals.

My rejection of the Corbin position, however, does not entail a finding that the bankruptcy court's opinion in this case is subject to independent review. In truth, I cannot review this appeal at all. An explanation for this conclusion follows.

■ While the bankruptcy court did not expressly determine the threshold question of ambiguity, such a finding is implicit in the entire fabric of the court's opinion. As noted above, the court found "the settlement agreement does not manifest an intent to convey a production payment" to appellants. *Simasko*, at 678. Thus the court did not find the language of ¶ 4 of the agreement to be clear and unambiguous in itself. Indeed, if the court had found the agreement to be unambiguous, then it would have held ¶ 4 to mean what it says; namely that appellants received a "production payment" from the debtor. Presumably the parties' very reason for using the term "production payment" in ¶ 4 was to convey such an interest. Further support for my conclusion that the bankruptcy court considered the contract to be ambiguous is found in that court's examination of at least one other portion of the contract, besides ¶ 4, in determining the parties' intent.[7]

The problem is that despite its inherent finding of ambiguity, the bankruptcy court did not consider extrinsic evidence in determining the intent of the parties. No extrinsic evidence came into play in the bankruptcy court's written decision, although the record reflects the existence of such evi-

---

6. Actually, on the basis of the old adage that two (or more?) heads are better than one, the appellate courts are usually more capable of such analysis.

7. The court's conclusion that the settlement agreement did not convey a "production payment" to appellants was based on three factors: (1) the last sentence of Exhibit C to the agreement expressly stated that the settlement agreement "in no way creates any lien, interest or other encumbrance upon any real property"; (2) Simasko failed to sign Exhibit C, and the signature of the grantor is generally required to convey an interest in realty; and (3) the use of the word "pay" and "payment" in the recitation clause of the settlement agreement and in ¶ 4 of the agreement was "consistent with the creation of the debt." *Simasko*, at 678. Only the last of these three factors involves consideration of the production payment clause of the agreement.

dence.[8]  Thus, the court failed to consider all the evidence available to aid it in resolving the ambiguity raised by ¶ 4.

The reason for this omission is obvious. The bankruptcy judge apparently believed he was effecting a legal conclusion. For instance, the bankruptcy judge conducted his entire consideration of the meaning of the settlement agreement under the heading "legal analysis."  He also stated that "[t]he facts are undisputed." *Simasko*, at 677.[9]  Resolution of the meaning of ¶ 4 of the settlement agreement, however, will turn on consideration of both the entire agreement itself *and* any admissible extrinsic evidence.  The extrinsic evidence could well give rise to disputed issues of fact. The bankruptcy court has not heard this extrinsic evidence.[10]  That court is the proper forum for its presentation.  Until all the evidence has been presented and findings of fact and conclusions of law entered on that presentation, review in this court is jejune.

In sum, the bankruptcy court erred in examining an ambiguous document without recourse to extrinsic evidence useful in ascertaining the intent behind that document.  As a result of this error, the court did not resolve the conflicts in evidence which are bound to arise upon consideration of such extrinsic evidence.  Neither did the court appraise the credibility of the witnesses supplying the evidence.  If no conflicts were extant nor any appraisals necessary, then the bankruptcy court erred in failing to so find.  This action must therefore be remanded for a determination of the parties' intent in ¶ 4 of the settlement agreement.  Otherwise, findings which should be reviewed are lacking.  Until this lacuna is filled, I am unable to

decide what standard of review applies to those findings currently before me.

IT IS ORDERED that the August 28, 1985 order of the bankruptcy court is vacated.  This case is remanded to the bankruptcy court for findings of fact and conclusions of law in accordance with the contents of this opinion. · Each party shall bear its or his own costs and fees on this appeal.

---

**8.**  *See* note 1, *supra*.  Exhibit C, which was considered in the bankruptcy court's opinion, is arguably extrinsic evidence because it was recorded separately under Alaska statute.  That exhibit, however, is expressly incorporated into the settlement document by ¶ 7 of the agreement.

**9.**  In ruling on appellee's motion to dismiss, I unthinkingly adopted this statement.  Memorandum Opinion and Order of March 13, 1987 at 1.  Due to the further consideration afforded

by today's opinion, I conclude that only the background facts concerning the underlying Alaska litigation, which forms the basis of this appeal, are not in dispute.

**10.**  Even if the court did consider documentary extrinsic evidence when it ruled on appellants' claim without a hearing, it did so *sub silentio*.  I cannot, of course, review an unarticulated conclusion.