**TRAYCO INCORPORATED,**
**Plaintiff–Appellee,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

**No. 91–2555.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 31, 1991.

Decided March 2, 1992.

Order Granting Rehearing and
Transferring Appeal
June 19, 1992.

Edward Roy Hawkens, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Michael Jay Singer, Civ. Div., U.S. Dept. of Justice, Washington, D.C., E. Bart Daniel, U.S. Atty., Columbia, S.C., on brief), for defendant-appellant.

Jon René Josey, Rogers McBratney & Josey, Florence, S.C., argued, for plaintiff-appellee.

Before SPROUSE and LUTTIG, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

OPINION

SPROUSE, Circuit Judge:

The United States appeals the district court's judgment entitling Trayco, an importer, to recover a penalty imposed by the United States Customs Service (Customs) for allegedly importing mislabeled goods. The government claims that the district court's judgment should be vacated because the district court lacks jurisdiction over importer-initiated suits to recover penalties imposed for the importation of mislabeled items. It contends that Congress granted exclusive jurisdiction over such actions to the Court of International Trade (CIT) when it enacted the Customs Courts Act of 1980.[1] Alternatively, the government argues that Trayco is estopped from seeking judicial relief because it paid the penalty.

I

Trayco is an importer and distributor of plumbing supplies. In November 1986, Trayco attempted to import cartons of indi-

1. 28 U.S.C. §§ 1581 et seq.

vidually packaged shower heads through the Port of Charleston, South Carolina. Upon inspection, Customs seized the shipment because the individual boxes were not properly marked with the country of origin as required by section 304 of the Tariff Act of 1930.[2] Customs released the shipment to Trayco's warehouse in South Carolina for supplemental marking.

A month later Trayco certified to Customs that the supplemental marking had been completed, whereupon a Customs official conducted a reinspection. The official found that the boxes had not been properly marked. The shower heads were seized and then released after Trayco posted the requisite security deposit and signed a form waiving all judicial claims relating to the shower heads.

Customs then sent Trayco a notice that a penalty would be imposed for Trayco's false certification that the shipment had been properly marked. Trayco responded, both orally and in writing, that the penalty was not warranted because the November 1986 shipment had in fact been properly re-marked as directed by Customs—asserting that the improperly marked shower heads discovered by the Customs official were not part of the November 1986 shipment. Customs, however, assessed Trayco a $12,-030.40 penalty.

Trayco petitioned Customs to reverse the penalty, but Customs refused. After Trayco filed a supplemental petition, however, the penalty was mitigated to $7,519. Trayco filed a second supplemental petition again asking Customs to reverse the penalty, but Customs again refused. As a prerequisite to filing the petition, Trayco was required to, and did, pay the mitigated penalty.

After the second supplemental petition was denied, Trayco filed suit in district court alleging that the penalty imposed by Customs was based on an erroneous finding of fact. The district court, over the government's objection, determined that it had subject matter jurisdiction over Trayco's claim pursuant to 28 U.S.C. §§ 1346(a)(2) and 1355. Based in part on

the testimony of Trayco employees who stated that they had re-marked the boxes in the 1986 shipment, the court concluded that Customs factually erred in determining that Trayco had submitted a false certification. It held that Trayco was entitled to recover the mitigated penalty, plus post-judgment interest.

The government on appeal does not challenge the district court's finding that the 1986 shipment was properly re-marked. Instead, the government again attacks the district court's jurisdiction, arguing that the CIT has exclusive jurisdiction over all import-related litigation, including controversies concerning the validity of penalties for importing mislabeled items. In the alternative, it argues that Trayco is estopped from seeking judicial relief because Trayco paid the mitigated penalty and executed a written waiver of any right to proceed in a judicial forum.

## II

The linchpin of the government's jurisdictional argument is that, by enacting the Customs Courts Act, Congress intended to select one forum, the CIT, for the resolution of customs-related controversies such as this.

The Customs Courts Act of 1980, 28 U.S.C. §§ 1581 *et seq.*, confers exclusive jurisdiction in the CIT over many trade issues. Section 1581 contains nine subdivisions granting the CIT exclusive jurisdiction over specified civil actions. The government conceded at oral argument that none of the specific jurisdictional provisions found in section 1581 encompass actions brought under section 304 of the Tariff Act, the section involved here. Furthermore, section 1582's grant of exclusive jurisdiction to the CIT applies only when the United States commences an import transaction suit, not when an importer brings a suit against the United States. Section 1583 only confers jurisdiction over counterclaims, cross-claims, and third-party claims which are not implicated here.

---

**2.** Codified at 19 U.S.C. § 1304(a).

It is clear then that no language in the Customs Courts Act of 1980 expressly provides the CIT with exclusive jurisdiction when an importer seeks refund of a penalty assessed under section 304 of the Tariff Act of 1930.

The government argues, however, that the detailed and comprehensive statutory scheme of the Customs Courts Act reveals an unmistakable congressional intent to confer exclusive jurisdiction in the CIT over controversies concerning penalties for the importation of mislabeled items.[3] In our view, that argument is effectively undercut by the Supreme Court's opinion in *K–Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988). The Court in *K–Mart* held that an action challenging a Customs' decision to permit the entry of "gray market" goods did not fall within CIT's grant of exclusive jurisdiction. In reviewing the legislative history of the Customs Courts Act, the Supreme Court noted:

> Congress did not commit to the Court of International Trade's exclusive jurisdiction every suit challenging customs-related laws and regulations. Had Congress wished to do so it could have expressed such intent much more clearly and simply by, for example, conveying to the specialized court exclusive jurisdiction over all civil actions against the Government directly affecting imports, or over all civil actions against the Government which arise directly from import transactions and which arise under the Tariff Act of 1930....

*K–Mart* at 187, 108 S.Ct. at 958 (internal citation, brackets, quotation marks, and ellipses omitted).

The Customs Courts Act was, of course, enacted to ensure greater decisional uniformity in Customs controversies, and to utilize the specialized expertise of the CIT to ensure efficient allocation of judicial resources.[4] *K–Mart*, however, makes clear that there are some limits to the CIT's exclusive jurisdiction. In our view, such limits are found in congressional language or in the absence of it. That is, if Congress failed to affirmatively grant exclusive jurisdiction, it does not exist. Such is the case here.

### III

Although we hold that Congress did not vest the CIT with exclusive jurisdiction over importer-initiated suits to recover penalties imposed for the importation of mislabeled goods, there remains the question of whether the district court was correct in determining that it had jurisdiction pursuant to 28 U.S.C. §§ 1346(a)(2) and 1355.

Section 1346(a)(2), a provision of the Tucker Act of 1887,[5] provides jurisdiction in the district court for:

> any civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

28 U.S.C. § 1346(a)(2). Although not involving a customs matter, there is respected precedent holding that this section provides recovery for penalties wrongfully imposed on private citizens by the United States. *See United States v. Tanker Monsoon*, 433 F.2d 95, 98 (1st Cir.1970) ("[u]nder the Tucker Act, 28 U.S.C. § 1346(a)(2), recovery may be had for penalties wrongfully exacted."). *See also Simons v. United States*, 497 F.2d 1046 (9th Cir.1974); *Pasha v. United States*, 484 F.2d 630 (7th

---

**3.** It is the government's position that importers can never directly initiate an action to challenge penalties imposed under section 304 of the Tariff Act of 1930. The government stresses that, under the relevant statutes, an importer who disputes the validity of a penalty may simply decline to pay. Customs then must initiate judicial proceedings to recover the penalty. *See* 19 U.S.C. § 1604. If that procedure were followed,

there is no question that the resulting action would be within the exclusive jurisdiction of CIT. *See* 28 U.S.C. § 1582(1).

**4.** *See* H.Rep. No. 96–1235, 96th Cong., 2d Sess. 20, *reprinted in* 1980 U.S.C.C.A.N. 3729, 3731.

**5.** The Tucker Act of 1887 is codified at 28 U.S.C. §§ 1346(a) and 1491.

Cir.1973); and *Menkarell v. Bureau of Narcotics*, 463 F.2d 88 (3d Cir.1972). We see no principled reasons for distinguishing between types of penalties that may be the basis for jurisdiction under section 1346(a)(2). Since the assessment of the penalty against Trayco was "founded ... upon ... [an] Act of Congress," section 304 of the Tariff Act of 1930, and is less than $10,000, we conclude that the district court properly exercised jurisdiction under section 1346(a)(2). Accordingly, we do not reach the issue of whether the district court also had jurisdiction pursuant to section 1355.

## IV

In the alternative, the government contends that Trayco is estopped from bringing suit under the theory of accord and satisfaction. It argues that when Trayco paid the penalty as a prerequisite to filing a third administrative petition, Trayco constructively agreed to be bound by Customs' decision, and by accepting the payment, Customs agreed to consider Trayco's third request for administrative relief and forbear bringing an enforcement action in the CIT. *See ARCA Airlines Ltda. v. United States*, 726 F.Supp. 827, 831 (S.D.Fla.1989), *aff'd*, 945 F.2d 413 (1991); *ITT Semiconductors v. United States*, 576 F.Supp. 641, 646 (C.I.T.1983); *Griekspoor v. United States*, 433 F.Supp. 794, 799 (M.D.Fla. 1977).

We are unpersuaded. Accord and satisfaction, of course, cannot be based on the unilateral action of one party. Attached to the payment of the mitigated penalty was Trayco's statement that payment was being made "under protest, reserving all rights to judicial review following exhaustion of administrative remedies." This distinguishes the cases cited by the government. Moreover, Trayco has continuously argued that the penalty was illegally imposed. Not only does the government fail to establish that it changed its position in reliance on any Trayco action, but any equities, it seems to us, lie with Trayco. There can be no estoppel under these circumstances.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

## ORDER

This case is before us on the government's petition for rehearing. We had previously affirmed the district court's judgment entitling Trayco, Inc., an importer, to recover a penalty imposed by the United States Customs Service for allegedly importing mislabeled the goods because the district court found that Trayco had not in fact mislabeled the goods. *Trayco, Incorporated, v. United States of America*, slip op. 91–2555 (03/02/92). See page 97. The district court based its jurisdiction upon §§ 1346(a)(2) and 1355. Both, in its brief and oral argument before us, the government argued principally that the district court lacked jurisdiction because Congress had granted exclusive jurisdiction for such actions to the Court of International Trade by enacting the Customs Courts Act of 1980, 28 U.S.C. § 1581, *et seq.* Alternatively, the government argued that Trayco was estopped because it had already paid the penalty.

We affirmed, dismissing both of the government's arguments. After holding that the Court of International Trade did not have exclusive jurisdiction, we agreed that the district court's jurisdiction could be found in 18 U.S.C. § 1346(a)(2). Now, for the first time, the government, in its petition for rehearing, challenges our appellate jurisdiction asserting that 28 U.S.C. § 1295(a)(2) gives exclusive jurisdiction to the United States Court of Appeals for the Federal Circuit to entertain appeals where district court jurisdiction is based in whole and in part on the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

Despite the fact that this point was not raised on appeal, we recognize that section 1295(a)(2), relating to subject matter jurisdiction is mandatory. In this respect, we decline to follow the Seventh Circuit's opinion in *Squillacote v. United States*, 747 F.2d 432 (1984), finding exception to the mandatory rule in circumstances similar to these. Despite the fact that the govern-

ment in its petition asks only that we vacate and transfer that portion of our decision relating to estoppel, we transfer the case in its entirety to the Federal Circuit.

It is hereby ORDERED that the rehearing is granted and that the appeal from the district court in its entirety be transferred to the United States Court of Appeals for the Federal Circuit.