**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 3 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

PUEBLO BANK & TRUST COMPANY,

Plaintiff-Appellee,

v.

LARRY D. STEELE, ARLYCE J.
STEELE, MAX G. STEELE, and
SHARON K. STEELE,

Defendants-Appellants,

and

FIRST NATIONAL BANK AND TRUST
COMPANY, Phillipsburg, Kansas; and
AZCOT, INC.,

Defendants.

No. 96-3122
No. 96-3191
(D.C. No. 94-CV-1409)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before BRISCOE, McWILLIAMS, and LUCERO, Circuit Judges.

Defendants Larry D. Steele, Arlyce J. Steele, Max G. Steele, and Sharon K. Steele

appeal the district court's grant of summary judgment in favor of plaintiff Pueblo Bank &

Trust Company in this mortgage foreclosure action. We affirm in part and dismiss in

part.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

On June 12, 1979, the Steeles executed a $200,000 promissory note in favor of Metropolitan Life Insurance Company, secured by a mortgage on real property in Greeley County, Kansas, and a deed of trust on real property in Prowers County, Colorado. On March 28, 1984, the Steeles executed a $50,000 note in favor of Citizens National Bank, which was not secured by any real property. On April 29, 1985, the Steeles executed a $540,000 promissory note in favor of Citizens National Bank, secured by a mortgage on real property in Greeley County, Kansas (a different parcel from that securing the Metropolitan note).

Federal Deposit Insurance Corporation (FDIC) became the receiver for Citizens National Bank in the late 1980's. On January 16, 1990, the Steeles entered into an extension and modification agreement with FDIC which essentially gave the Steeles additional time to pay the $540,000 note. A three-way transaction occurred between FDIC (as receiver for Citizens National Bank), Pueblo, and the Steeles on July 17, 1992. Pueblo loaned the Steeles $200,000 which the Steeles used to pay certain obligations to FDIC. In turn, Pueblo received a deed of trust from the Steeles on real property in Prowers County, Colorado (the same parcel securing the 1979 Metropolitan note). On its face, the deed of trust indicated it was intended to act as security for the $200,000 loan. Pueblo also received the $50,000 and $540,000 notes from FDIC. According to Pueblo, it entered the transaction on its books by lumping together in a single obligation the balance due on the $540,000 note and the $200,000 loan. The balance on this single obligation was approximately $480,000. On July 21, 1992, Metropolitan assigned to Pueblo the Metropolitan note, as well as the underlying mortgage on the Greeley County property

and the underlying deed of trust on the Prowers County property, in return for $113,734.80.

Based on the described transactions, Pueblo became the holder of the Metropolitan note, the $50,000 note, the $540,000 note, two deeds of trust covering the same parcel of land in Prowers County, Colorado, and two mortgages covering separate parcels of land in Greeley County, Kansas. The Steeles defaulted on the $540,000 note after failing to pay the 1993 annual payment and Pueblo declared the entire balance due and payable. Leo Altman, Pueblo's agent and attorney, mailed to the Steeles a "NOTICE OF ELECTION AND DEMAND FOR SALE BY PUBLIC TRUSTEE," stating the "original principal amount" of debt was $590,000, that "the outstanding principal balance due and owing" was $573,687.85, and that "[t]he debt [wa]s evidenced by the original $540,000.00 Note, the copy of the $50,000.00 Note, and the original two-page Agreement dated July 27, 1992." Appellant's append. at 239.

Altman sent a letter to the Public Trustee of Prowers County, Colorado, on May 20, 1994, transmitting various documents in connection with the foreclosure, including a copy of the $540,000 note, a copy of the $50,000 note, and a copy of the July 17, 1992, deed of trust. Altman noted "this is a little different from the normal foreclosure of the Deed of Trust that simply secures a Promissory Note, but the Agreement provides for this second mortgage as the basis of additional security for the repayment of the $540,000.00 Note which is currently in default." Id. at 220. On June 15, 1994, Altman filed a motion and notice of foreclosure in the Pueblo County District Court, which stated in pertinent part:

> Applicant, The Pueblo Bank and Trust Company, has filed a Motion with this Court, claiming to be the owner of a promissory note executed by Larry D.

Steele and Max G. Steele dated April 29, 1985 in the original principal sum of $540,000, . . . together with an Agreement between Applicant and Larry D. Steele, Arlyce J. Steele, Max G. Steele, and Sharon K. Steele dated July 17, 1992 as additional security, . . . all secured by a Deed of Trust dated July 17, 1992 and recorded July 20, 1992 . . . .

       The Motion claims that Applicant has the right to foreclose the deed of trust because principal and interest have not been paid as called for in said note and deed of trust.

Id. at 101.

On July 8, 1994, the Pueblo County District Court issued an order authorizing the Public Trustee of Prowers County to sell the real property described in the July 17, 1992, deed of trust. On July 15, 1994, Altman submitted a bid for the property in the amount of $174,085.68 (of which $172,000 was allegedly principal), with a stated deficiency of $25,914.32. He submitted an amended bid on July 19, 1994, in the amount of $174,085.68 (the same as the original bid), but with a stated deficiency of ".00." This became the successful bid on the property. At Pueblo's request, the Public Trustee typed the following on the original $540,000 note and on the July 17, 1992, agreement between Pueblo and the Steeles:

> Date of Sale:          July 19, 1994
> Public Trustee Sale No.:   5-94
> Amount of Indebtedness:  $174,085.68 ($\pm$ $573,687.85)*
> Amount of Bid at Sale:    $174,085.68
>     *An indebtedness of $200,000 was secured by the Deed of Trust owned and held by the Pueblo Bank and Trust Company that was foreclosed by means of Public Trustee Sale No. 5-94 on July 19, 1994. Said indebtedness was evidenced by and described in this two-page "Agreement" and was satisfied in full by the successful bid of $174,085.68 submitted at Public Trustee Sale No. 5-94. In addition, a $540,000 Promissory Note dated April 29, 1985 and executed by Larry D. Steele and Max G. Steele (also referenced in the "Agreement") was assigned to Pueblo Bank and Trust Company as part of the same transaction; per instructions from counsel for Pueblo Bank and Trust Company, the successful bid of $174,085.68 is to be credited against the balance remaining due on said Promissory Note. Based upon the Affidavit of said counsel dated May 24, 1994, and furnished to the Prowers County Public Trustee, the outstanding

balance of said Promissory Note as of May 20, 1994 was $573,687.85. After crediting the bid of $174,085.68, the new outstanding balance of said Promissory Note is approximately $399,602.17 plus interest.

Id. at 222.

Pueblo filed the present action on September 12, 1994, alleging the Steeles were in default on the $540,000 note and the Metropolitan note, and asking the court to grant judgment in rem against the Steeles and issue a decree for foreclosure and sale of the mortgaged properties. The district court granted summary judgment in favor of Pueblo on November 17, 1995, and on March 6, 1996, issued a decree of foreclosure. On May 3, 1996, the court entered judgment in favor of Pueblo.

## I. **Jurisdiction**

The Steeles filed two separate appeals from the district court's orders. The original notice of appeal in case No. 96-3122 was filed on April 1, 1996, after the decree of foreclosure had been entered. Following entry of final judgment, the Steeles filed a second notice of appeal in case No. 96-3191 on May 24, 1996. The appeals were subsequently consolidated. Because the first notice of appeal ripened on May 3, 1996, with the entry of final judgment, Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645 (10th Cir. 1988) (en banc) (holding premature notice of appeal ripens when district court enters final judgment on remaining claims), and because the second notice of appeal was timely filed, we conclude we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. **Foreclosure of the $540,000 note**

The Steeles contend the district court erred in granting summary judgment in favor of Pueblo on its cause of action based on the $540,000 note. According to the Steeles, Pueblo is barred from pursuing this cause of action because the Colorado foreclosure

-5-

proceeding completely satisfied the debt on this note. More specifically, the Steeles argue the Colorado foreclosure proceeding was based on the same note and Pueblo admitted the debt was satisfied when it submitted a bid for the Colorado property indicating a zero deficiency. Accordingly, the Steeles argue Pueblo's cause of action on the $540,000 note is barred by (1) the doctrine of waiver, (2) the doctrine of accord and satisfaction, and (3) res judicata or collateral estoppel. We disagree.

*Waiver*

Although the pleadings filed in connection with the Colorado foreclosure proceeding are admittedly confusing, one crucial fact weighs against the Steeles' waiver argument. The July 17, 1992, deed of trust indicates it was intended as security for the $200,000 debt owed by the Steeles to Pueblo. Nowhere does the deed of trust mention the $540,000 note. We conclude the $540,000 note was not secured by the July 17, 1992, deed of trust. See Smith v. Haertel, 244 P.2d 377, 379 (Colo. 1952) (en banc) (holding "the nature and amount of the indebtedness secured by [a] mortgage must be so expressed that subsequent purchasers and attaching creditors need not look beyond the mortgage itself to ascertain both the existence and amount of the debt"). Accordingly, we conclude Pueblo's alleged failure to include the amount owing on the $540,000 note in the deficiency amount of the amended bid could not have operated to waive the Steeles' debt on the note.

Moreover, we note the only case cited by the Steeles in support of their argument, United Guar. Residential Ins. Co. v. Vanderlaan, 819 P.2d 1103 (Colo. App. 1991), is not on point. In Vanderlaan, the lender submitted a bid of $200,000 (the full amount of the

debt) but then attempted to lower its bid to $126,000 (apparently the fair market value of the property) after the sale had taken place. The Colorado Court of Appeals, citing Colorado civil procedure, rejected this attempt. Here, Pueblo did not attempt to lower the amount of its bid after the sale and Vanderlaan is not applicable.

*Accord and satisfaction*

The Steeles appear to be asserting Pueblo's unilateral actions in foreclosing on the Colorado property, in particular its listing of a zero deficiency in its amended bid, constitute an accord and satisfaction. As pointed out by Pueblo, "[a]ccord and satisfaction . . . cannot be based on the unilateral action of one party." Trayco v. United States, 967 F.2d 97, 100 (4th Cir. 1992). Rather, because it is "an adjustment of a disagreement as to what is due from one party to another through payment of an agreed amount," it "must be consummated by a meeting of the minds and accompanied by sufficient consideration." EF Hutton & Co. v. Heim, 694 P.2d 445, 451 (Kan. 1985). Here, the uncontroverted facts indicate there was no agreement between Pueblo and the Steeles concerning resolution of the $540,000 note. Accordingly, the doctrine of accord and satisfaction does not apply.

*Res judicata/collateral estoppel*

Finally, we reject the Steeles' assertion that the doctrines of res judicata and collateral estoppel preclude Pueblo's foreclosure action on the $540,000 note. Although a Colorado state court did authorize the sale of the Colorado property, that court did not decide any issues relevant to the instant proceeding. Rather, the Colorado state court

determined there was a reasonable probability that default had occurred and that the proposed foreclosure sale was otherwise proper pursuant to the Soldiers' and Sailors' Relief Act of 1940. See Vanderlaan, 819 P.2d at 1104. The Colorado court did not determine the $540,000 note was satisfied by the submission and acceptance of Pueblo's bid on the Colorado property, nor did it specify in its order authorizing sale which debt was being foreclosed. Moreover, the foreclosure proceedings were not adversarial in nature and no final judgment was entered. See id. at 1105.

### III. Foreclosure of the Metropolitan note

The Steeles argue Pueblo's cause of action on the Metropolitan note is barred by the doctrine of merger. The only case cited by the Steeles, Centennial Square, Ltd. v. Resolution Trust Co., 815 P.2d 1002, 1005 (Colo. App. 1991), holds the doctrine of equitable merger applies "when the value of the property [foreclosed] is equal to or exceeds the debt represented by the mortgage." Clearly, the value of the Colorado property purchased by Pueblo did not exceed the combined total of the amounts owing under the $200,000 agreement, the $540,000 note, and the Metropolitan note. In fact, the value of the property was sufficient only to pay off the balance owing on the $200,000 agreement. There is no evidence the amount Pueblo paid for the Colorado property reflected a deduction for any prior obligations. See Ruther v. Thomas, 604 P.2d 703, 706 (Colo. App. 1979). There is no basis for applying the doctrine of merger.

### IV. Redemption period on the Metropolitan note

In their final issue on appeal, the Steeles argue the proper redemption period on the Metropolitan note should have been one year instead of ninety days. This issue is moot.

There is no indication the Steeles sought a stay of the district court's judgment pending appeal. Further, it is uncontroverted that, after the court entered judgment, the Steeles sold their redemption rights to a third party, who in turn redeemed the subject property within the ninety-day redemption period. In short, the events that transpired during the pendency of this appeal have made it impossible for us to grant any effectual relief to the Steeles on this issue. See In re Osborn, 24 F.3d 1199, 1203 (10th Cir. 1994) (holding an appeal must be dismissed as moot if appellate court cannot fashion effective relief due to events that occurred while appeal was pending); CSG Exploration Co. v. F.E.R.C., 930 F.2d 1477, 1482 (10th Cir. 1991) ("The federal courts cannot issue advisory opinions or 'decide questions that cannot affect the rights of litigants before them.'") (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)); Mount Carbon Metropolitan Dist. v. Lake George Co., 847 P.2d 254, 256 (Colo. App. 1993) (holding debtor's appeal moot where foreclosure sale had been held and redemption period had expired). Accordingly, we dismiss this portion of the appeal. See United States v. Chavez-Palacios, 30 F.3d 1290, 1293 (10th Cir. 1994) ("If a case becomes 'moot' at any phase of any judicial proceeding, then the case must be dismissed.").

The judgment of the district court is AFFIRMED. The portion of the Steeles' appeal pertaining to the redemption period on the Metropolitan note is DISMISSED as moot.

Entered for the Court

Mary Beck Briscoe
Circuit Judge